### BENDER v. APPELBAUM.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. EVIDENCE—ANIMALS.

Animals may be introduced in evidence for purposes of inspection to determine identity.

2. APPEAL—REVIEW—PRESUMPTIONS.

Where the minutes in an action to recover a horse, which defendant asserts is not the one covered by plaintiff's mortgage, after stating that the parties rest, concludes with the statement that the case will be adjourned for the purpose of producing the horse in order to have it properly identified, and nothing further is shown except the recital that "after a personal inspection of the horse at issue in this action" judgment was rendered for defendant, this cannot be sustained, as, if the horse was regarded as evidence in the case, the minutes should show that it was produced as any other real evidence must be produced, subject to the scrutiny and inquiry of plaintiff in the course of the trial, and it should appear, if such evidence came in, how the judge was satisfied that the horse he saw was the horse sued for, or that the parties agreed that a horse to be inspected by the judge was such horse.

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by Simon Bender against Louis Appelbaum. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Herman H. Baker, for appellant.
Max Brown, for respondent.

JENKS, J. This is an action in the Municipal Court to recover a horse. The appeal is by the plaintiff from a judgment entered upon a decision in favor of the defendant. The plaintiff contends that the defendant is in possession of a horse, one of three, sold by the plaintiff to Mayers, who in part payment therefor executed to the plaintiff a chattel mortgage upon the horses. The mortgage was duly recorded. The defendant contends that he bought this horse from Mayers previous to the sale of the three horses to Mayers by the plaintiff. The horse sold by plaintiff to Mayers was described by certain marks. The principal question litigated was the identity of the horse in the defendant's possession with a horse covered by the chattel mortgage. The minutes show that during the course of the trial the defendant's counsel asked his client when the latter was on the witness stand:

"Q. Can you produce that horse? A. Yes, sir.
"Q. How long will it take? A. Well, it might take me an hour and a half or two hours.
"By the Court: Q. Couldn't you telephone up there, and ask somebody to bring him down now, trot him down in 30 minutes? A. The horse is lame and can't travel very fast. When I bought him, he was lame."

This ended the suggestion. The minutes close thus:

"Plaintiff's Counsel: That is all. Defendant rests. The Court: I will adjourn this case for the purpose of producing the horse in order to have it properly identified."

There is no further record of the trial. The trial was had on February 20, 1907. On the back of the summons returned is printed a record of the case, showing the appearances, the pleadings, etc. There appears written across the summons these words:

"After a personal inspection of the horse at issue in this action, I render judgment after a trial upon the merits in favor of the defendant, with costs to be taxed by the clerk of this court against the plaintiff. Dated Feb'y 25, 1907."

This is subscribed with the initials of the Municipal Court justice who presided at the trial and of his office. The learned counsel for the appellant insists that it was error for the justice "to inspect the horse in the absence of the plaintiff or his attorney upon a continuation of the trial," urging that there was no evidence that the justice saw the particular horse which the plaintiff claimed. On the other hand, the learned counsel for the respondent contends:

"It appears from the testimony that the horse had different marks from what the plaintiff testified to, and the court ordered the production of the

horse for inspection in the presence of the plaintiff and the defendant, and it was found that it was not the horse claimed by the plaintiff; and the court below rendered judgment accordingly in favor of the defendant."

It may be remarked that the statement that the court ordered the horse for inspection in the presence of the plaintiff and defendant is not a statement that it was inspected under such conditions. The court was commendably solicitous to shed all possible light upon the case; and hence it sought for what the text-writers call "real" evidence. There was no objection made to the production of the horse or to the continuance of the case for that purpose. There was no legal objection to the purpose of the court. Hunter v. Allen, 35 Barb. 42; Elliott on Evidence, § 1233; Wigmore on Evidence, §§ 411–416. There are instances where animals have been brought into court. Elliott on Evidence, supra; 20 Alb. Law Journal, 151; Line v. Taylor, 3 F. & F. 731; Taylor on Evidence, § 555, also cited in Burr-Jones on Evidence, § 405, citing Wood v. Peel, Ex., Mddx. Sittings after T. T., cor. Alderson, B., Mss. The horse might have been produced to prove the truth of the assertion that it was not the horse, or the contrary. People v. Buddensieck, 103 N. Y. 498–499, 9 N. E. 44, 57 Am. Rep. 766. The horse if considered was in one sense in the nature of evidence. People v. Thorn, 156 N. Y. 297, 50 N. E. 947, 42 L. R. A. 368. It seems to me that, if the horse was regarded by the court as evidence in the case, the minutes should show that it was produced in the case just as any other real evidence must be produced. But the minutes of the trial fail to show that the horse was produced during the trial of the case. The judge who presided thereat simply certifies that he personally inspected the horse. The case seems to have turned upon this real evidence, and it should appear, if such evidence came into the case, how the judge was satisfied that the horse he saw was the horse, or, in any event, that the parties agreed that a horse to be inspected by the judge was the horse. For aught that appears, the judge simply continued the trial, but nothing further was done in the trial, and the judge at some later time wrote in his decision that he had inspected the horse and then gave judgment. It does not appear how the court concluded that the horse it inspected was the particular horse in dispute. If the horse was to be regarded as part of the evidence, it could only be produced in evidence subject to the scrutiny and inquiry of the plaintiff in the course of the trial.

The judgment is reversed, and a new trial is ordered, costs to abide the event. All concur.