OPINION OF THE COURT
Gabrielli, J.
In this case, we are called upon to consider whether and under what circumstances a criminal defendant is entitled to have the jury informed that one or more of his witnesses was rendered unavailable to testify as a result of the witness’ own decision to invoke his constitutional privilege against self incrimination. Although we conclude that no such explanatory instruction was required under the circumstances of this case, we hasten to add that there may be instances in which a proper neutralizing instruction is necessary in order to correct any misimpression that may arise in the jurors’ minds from the witness’ absence at trial.
Defendant was charged with robbery in the first degree (Penal Law, § 160.15), criminal possession of a weapon in the second degree (Penal Law, § 265.03) and criminal possession of stolen property in the second degree (Penal Law, § 165.45). According to the People’s case, defendant had driven in a stolen car to a service station manned by *470 one Joseph Lataillade at about 4:00 A.M. on the morning of April 5,1976. After receiving two dollars’ worth of gasoline, defendant allegedly pointed a gun at Lataillade through the car window and demanded money from the attendant. Lataillade promptly complied by reaching into his pocket and handing the driver of the automobile some 45 to 50 single dollar bills.
Approximately one half hour later, two police officers in a patrol car spotted a vehicle at a second service station which matched the radioed description of the vehicle involved in the Lataillade robbery. A high-speed chase ensued, and defendant was ultimately apprehended. In a subsequent search of defendant’s person, the police found a substantial sum in cash, including 49 single dollar bills.
Defendant’s version of events on the morning in question differed markedly from that advanced by the People. According to defendant, he had been in a bar with two other individuals until about 4:00 A.M. on the morning of the robbery and had borrowed the stolen car in which he was arrested from a friend only after he had returned to his home and had decided to go back to the bar. Defendant took the position at trial that it was Alan Whitlock, the person who had loaned him the car, who actually committed the Lataillade robbery.
After defendant’s two alibi witnesses had testified at the trial, defense counsel attempted to call Alan Whitlock to the witness stand, presumably for the purpose of eliciting from Whitlock his role in the robbery. Whitlock appeared, but, outside of the presence of the jury, immediately made it clear that he would refuse to testify on the ground that his testimony might tend to incriminate him. In response to this turn of events, the Trial Judge ruled that defense counsel would not be permitted to place Whitlock on the witness stand for the sole purpose of eliciting his refusal to testify. Although the Trial Judge indicated that he would allow Whitlock to testify if defense counsel demonstrated that he had questions which the witness would answer, defense counsel declined to take advantage of the court’s offer, stating only that “I intend to ask him things which I don’t think I should be compelled at this point to dis *471 close to the Court”. Defense counsel once again stressed his conviction that he had an absolute ¡right to place Whitlock on the witness stand and, when the court refused to reconsider its ruling, demanded, as alternative relief, that the District Attorney stipulate for the benefit of the jury that Whitlock would have asserted his constitutional privilege had he been permitted to take the stand. This request too was denied, however, upon the ground that such a stipulation would place before the jury precisely the same irrelevant information that the jury would have received if Whit-lock had been placed on the witness stand.
The trial continued after this incident, and defense counsel called several other witnesses, including one Willis Payne. Payne testified that, during the period when he and Whitlock were in jail together, Whitlock had told him that he and not defendant had committed the crime with which defendant was charged. In spite of this revelation, defendant made no further request to have the jury informed of the reasons for Whitlock’s failure to appear. He did attempt, however, to put another individual, David Cook, on the witness stand, although, like Whitlock, Cook made it clear that he would refuse to testify on constitutional grounds. For the second time, , the trial court held that the witness would not be permitted to invoke the privilege against self incrimination in the presence of the jury unless there was a realistic possibility that the witness would give some testimony relevant to the issues in the case. The court also ruled that defendant was not entitled to have the jury informed of Cook’s decision to stand on his privilege.
At the conclusion of the trial, the jury found defendant guilty on all three counts in the indictment. The conviction was unanimously affirmed by the Appellate Division, which rejected defendant’s contention that he had been deprived of his right to a fair trial because of the trial court’s refusal to allow Whitlock and Cook to take the witness stand. The Appellate Division also concluded that the trial court’s refusal to instruct the jury concerning the reasons for the witnesses’ absence was not error under the circumstances of the case. We agree with the position taken by the Appellate Division, and, accordingly, we hold that the order of *472 that court upholding the judgment of conviction should be affirmed.
At the outset, we reject defendant’s contention that he had an absolute right to place Whitlock and Cook on the witness stand even after the witnesses had informed the trial court that they had no intention of testifying. As we held in People v Sapia (41 NY2d 160, 163-164, cert den 434 US 823), the decision whether to permit defense counsel to call a particular witness solely “to put him to his claim of privilege against self incrimination in the presence of the jury” rests within the sound discretion of the trial court (accord United States v Licavoli, 604 F2d 613, 624; United States v Espinoza, 578 F2d 224, 228; United States v Reese, 561 F2d 894, 899; United States v Martin, 526 F2d 485, 487; United States v La Couture, 495 F2d 1237, cert den 419 US 1053; Bowles v United States, 439 F2d 536 [en banc], cert den 401 US 995). The rule is founded on the sound premise that a witness’ refusal to testify on constitutional grounds does not, in and of itself, have any real probative significance, although it may have a disprono^tionate impact upon the minds of the jurors and may tend to create the impression that the witness is guilty of a particular crime (see Bowles v United States, supra, at pp 541-542). In the context of the instant case, for example, there existed a very real danger that the jury would infer from Whitlock’s refusal to testify that defendant’s contention was correct and that it was Whitlock rather than defendant who had actually committed the Lataillade robbery. Yet, such an inference would clearly have been unwarranted, since Whitlock’s refusal to testify could have been based upon considerations wholly unrelated to the crime at issue in the instant trial. Indeed, inasmuch as the witness is, at least in the first instance, the sole arbiter of the applicability of the constitutional privilege to his own situation (Hoffman v United States, 341 US 479, 488; United States v Burr, 25 Fed Cas 38 [Marshall, J]; People v Arroyo, 46 NY2d 928, 930; People ex rel. Taylor v Forbes, 143 NY 219, 230-231; see Fisch, New York Evidence, § 697), a particular witness’ decision to refrain from testifying can never mean more than that the witness *473 himself believes that something he might say would tend to implicate him with respect to some criminal wrongdoing of which only he is aware. It would thus be wholly improper in most situations to give the jurors an opportunity to speculate as to the nature of this wrongdoing by allowing a party to parade a witness before the jury for the sole purpose of eliciting in open court the witness’ refusal to testify.
For the same reasons, we conclude that there was no error in the trial court’s denial of defense counsel’s request for an instruction advising the jury that the witness David Cook had elected to invoke his constitutional privilege. Similarly, we cannot regard as improper the District Attorney’s refusal to stipulate in open court that Alan Whitlock would have invoked the privilege against self incrimination had he been allowed to take the witness stand. In making these requests, defendant was, in essence, attempting to accomplish indirectly that which we have already concluded could not be accomplished directly. Since the invitation to the jury to engage in unwarranted speculation exists whether the jury is informed of a witness’ refusal to testify by the Trial Judge or by the witness himself, we cannot say that it was error for the trial court in this case to reject defendant’s requests for an explanatory instruction or for a factual stipulation.
This is not to suggest that a defendant is never entitled to ask the trial court to intervene when a witness who might possess information valuable to the defense refuses to testify on constitutional grounds. Just as the trial court has a duty to intercede when there is a danger that a jury will be led to draw an unwarranted inference against the People, so too should the trial court take every reasonable step to ensure that the jury will not draw an improper inference against the defendant as a result of a potential witness’ refusal to speak. Thus, when a jury has been made aware during the course of a trial that a particular witness who has been barred from the witness stand due to his refusal to testify might possess information that would be helpful to the defendant’s case, the trial court should, upon request, give the jurors a neutral instruction advising them that *474 the witness has become unavailable for reasons beyond the defendant’s control and that, consequently, no adverse inferences may be drawn from the witness’ failure to appear.[1] Such a neutral instruction would have the salutary effect of preventing the jury from assuming improperly that the witness was not called because his testimony would not have supported the defendant’s position. At the same time, by omitting a specific reference to the witness’ decision to invoke his constitutional privilege against self incrimination, the trial court may avert any unwarranted and harmful speculation, by the jurors that the witness is guilty of a particular crime.
In this case, defendant might well have been entitled to such a neutral instruction regarding Alan Whitlock’s failure to testify had he made an appropriate request therefor, since the jury had been made aware of Whitlock’s significance to defendant’s case through the testimony given by defendant and by the witness Payne.[2] Defendant, however, did not request such a neutral instruction, but instead chose to rely exclusively upon the contention that he had an absolute right to have the jury informed of Whitlock’s decision to invoke the privilege against self incrimination. Hence, he is now foreclosed from assigning as error the trial court’s failure to give a curative instruction of the type suggested by the foregoing analysis.
The other assertions concerning alleged improprieties in the conduct of his trial require only brief mention. First, defendant contends that the trial court erred in permitting the service station attendant, Lataillade, to make an in-court identification naming him as the perpetrator of the *475 early morning robbery after the court had made a preliminary determination that a pretrial identification by Lataillade was “tainted” as a result of overly suggestive circumstances.[3] Contrary to defendant’s present assertions, however, there was ample evidence to support the trial court’s conclusion that Lataillade’s observation of defendant during the commission of the crime furnished an adequate “independent basis” for an accurate in-court identification. Thus, we see no reason to disturb the trial court’s ruling on this point (People v Whisby, 48 NY2d 834).
Defendant also argues that this conviction should be reversed because the District Attorney acted improperly on several occasions during the course of the trial. Although we agree with defendant that there were two or three occasions when the District Attorney overstepped his proper bounds by alluding to uncharged crimes and by making brief reference to physical evidence not mentioned in the People’s bill of particulars, we cannot say on the basis of the present record that defendant was deprived of his basic constitutional right to a fair trial. As is apparent from the record, this was a strenuously contested trial in which both sides pressed their respective advantages at every possible opportunity. And, while we are unwilling to excuse entirely some of the prosecutor’s tactics in this case as mere instances of “overzealous advocacy”, we are also unable to conclude that the prosecutor’s infractions were of constitutional proportion.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

. One Federal court has suggested an instruction which we find particularly well suited in cases such as this: “There has been testimony in this case about [a witness] named [John Doe]. As a result of a hearing held outside the presence of the jury, the court has determined that [Mr. Doe] is not available to be called as a witness by either side in this case. The jury may not draw any inference from the fact that [Mr. Doe] did not appear as a witness” (United States v Martin, 526 F2d 485, 486-487).

. Defendant would not necessarily have been entitled to a similar instruction with respect to the witness Cook’s failure to testify. Since it does not appear that the jury was made aware of Cook’s significance to defendant’s case during the course of the trial, an instruction to the jury to disregard Cook’s absence might have served only to confuse the issues.

. It should be noted that the “suggestive” circumstances which persuaded the court to suppress Lataillade’s pretrial identification were not the result of any misconduct on the part of the police. Instead, the decision to suppress was based upon a series of coincidences and unfortunate instances of poor timing which rendered the accuracy of Lataillade’s police station identification somewhat questionable.