OPINION OF THE COURT
Frederic S. Berman, J.
Can a human being — like a gun, drugs, clothing or photograph, among others — be introduced as an exhibit in a criminal case?
Curiously, that precise question has apparently not been dealt with in previous reported cases.
This rather exotic and interesting issue arose during a murder trial in which the defendant was accused of shooting to death one Ernesto Luciano outside the Tres Copas Bar in Manhattan on December 15, 1980. At the trial, defense counsel informed the jury during jury selection and in his opening statement that not only would the People fail to prove the defendant’s guilt beyond a reasonable doubt, but, the defendant would prove the identity of the real killer, an individual named Miguel E. (last name withheld).[1] To support his contention, counsel asserted that Miguel E., who resembled the defendant, more closely fitted the description of the perpetrator as described to the police by an eyewitness to the shooting.
*1084 Consequently defendant’s counsel considered calling Miguel E. as a witness, but the latter, awaiting trial on an unrelated kidnapping charge in The Bronx, chose to exercise his Fifth Amendment right against self incrimination and refused to testify.
Accordingly, forearmed with this knowledge, this court refused to permit Miguel E. to be called as a witness. (See People v Thomas, 51 NY2d 466; People v Sapia, 41 NY2d 160.) The court, in its discretion may make this determination in order to prevent the jury from drawing any inferences from the witness’ assertion of his Fifth Amendment rights (United States v Martin, 526 F2d 485).
Since Miguel E. would not be sworn as a witness, the prosecutor then sought to introduce him as an “exhibit” so that the jury could determine if he resembled the perpetrator as claimed by defense counsel.
He was thereupon deemed marked as a People’s exhibit, displayed before the jury and made available during the time the jury was deliberating in the event they wanted to view him again.
Judicial literature and case law is surprisingly sparse on the subject matter of a human being as a trial exhibit in a criminal case. In researching this issue, it becomes apparent that the traditional law of real or demonstrative evidence is applicable.
Some treatises draw a distinction between real and demonstrative evidence. The latter is deemed to concern itself with real objects which illustrate some verbal testimony and has no probative value itself, such as maps or photographs depicting a crime scene described by a. witness. The former concerns objects which, themselves, played a part in the case, such as the murder weapon or clothing worn by the victim.[2] The distinction seems unnecessary. The jury, in all cases, will make its own judgment as to the weight accorded the object. For the purpose of clarity however, we will refer to real evidence, for that is what concerns us in the case at bar.
*1085 There are obviously some pitfalls surrounding the use of real evidence. An appellate court, having no access to the person or object in question, is deprived of evidence that would otherwise be included in the record. In addition, juries may attach inordinate weight to an object. For this reason the Trial Judge is accorded much discretion in permitting or excluding its introduction (McCormick, Evidence [2d ed], § 212; Fisch, NY Evidence [2d ed], § 134).
As with most evidence, neat categories have emerged concerning the issue of the introduction of persons into evidence.
Historically, in civil cases, the courts have permitted a person to be exhibited in order to determine race. “The admissibility of this evidence has never been doubted by Courts; though its use, since the abolition of slavery in this country, is now very rare” (1 Wigmore, Evidence [3d ed], § 167; see, also, White v Holderby, 192 F2d 722).
Similarly, the exhibit of a person to determine nationality in connection with a habeas corpus proceeding where paternity was an issue was upheld in Peters v Campbell (80 Wyo 492); in United States ex rel. Fong On v Day (54 F2d 990), a person was exhibited in order to show age. (See, also, Wellington Assoc. v Vandee Enterprises Corp., 75 Misc 2d 330.)
New York’s old Penal Code (L 1881, ch 676, § 19) permitted the production of a person in order for the jury to determine his age. There is no similar provision in the present Penal Law.- In a case arising under the old Penal Code, defendant was convicted of abduction for the purposes of prostitution or sexual intercourse. The victim’s age could properly be corroborated by her appearance on the stand, and the jury was at liberty to determine whether she was under the age of consent. (People v Ragone, 54 App Div 498.) Similarly, in a case involving a juvenile offender under the age of 16 years, the court was permitted to determine his age by an inspection of the defendant (People v Kaminsky, 208 NY 389).
In civil matters, New York by statute permits a child whose age is in issue to be exhibited to the jury (CPLR 4516).
*1086 Traditional English practice permitted the introduction of a child into evidence for the jury to determine whether it resembled the putative father. It was an affirmation of the validity of the physiological principle that a child will resemble his parent. (See 1769 Lord Mansfield, C.J., in the Douglas Peerage Case — 2 Hargr Collect Jurid 402 [1 Wigmore, Evidence (3d ed), § 166].) Some United States jurisdictions permit this practice (see, e.g., State v Johnson, 361 Mo 214 [statutory rape prosecution]). Wigmore cautions that the better rule would be to prohibit the introduction of this evidence, however presented (i.e., whether in the form of testimony or by presentation to the jury), unless the child has, in the opinion of the trial court “settled features.” (Flores v State, 72 Fla 302 [exhibition of child not yet three months old on an issue of paternity was erroneous].)
Some courts prohibit the exhibit, cautioning that it is better if verbal testimony is presented concerning physical resemblance, since the appellate court then has all the evidence before it (Almeida v Correa, 51 Hawaii 594 [revd on other grounds]).
In New York, neither a person nor a photograph of a person may be exhibited to prove his relationship to another because conclusions based upon such resemblance of features are deemed unreliable (Fisch, NY Evidence [2d ed], § 139; also Bilkovic v Loeb, 156 App Div 719).
Without doubt, there is historical justification to permit the introduction of a person into evidence to prove that he is or is not the disputed party. R. v Buckworth (1 Sid 377 [1669]), concerned a perjury case involving the birth of a posthumous child, said to have been falsely procured by its mother from another woman. The child’s delivery was proved by circumstantial evidence. In addition, the child was stripped and shown in court. In Abbott v Strata Marcella’s case (9 Co Rep 30 [1592]), a person said to be dead was introduced into evidence.
The principles permitting the introduction of a person to determine identity are apparently more acceptable where animals are involved. It is easier to think of them as “objects” for the jury to view and examine. In a case tried *1087 before the Exchequer Division of the High Court of Justice, July 18, 1879 (20 Albany Law J 150), an elephant was introduced into evidence to demonstrate “its amiable manners.” Where the issue concerned the question of whether defendant’s horse was the one covered by a chattel mortgage, the court held that the horse’s identity could be established by his introduction into evidence. (Bender v Appelbaum, 123 App Div 563).
Notwithstanding the absence of case law on the subject of the introduction of a human being as an exhibit in a criminal case, there is one recent case which tangentially addressed the question by implication.
In People v Shields (81 AD2d 870), the complainant in a rape trial claimed to have seen her attacker naked from the waist down. The defendant claimed he was mistakenly identified and offered to prove this by laying a foundation of hospital records and a sister’s testimony to establish that he had a long abdominal scar in existence prior to the attack (the existence of the scar not being testified to by the victim). Defendant would then, as it were, offer himself into evidence by exhibiting the scar to the jury.
The trial court was found by the appellate court to have abused its discretion by denying defendant this procedure and requiring him to take the stand, thus allowing him to be impeached by inquiry regarding his prior convictions.
Although not dealt with precisely, one can imply from Shields (supra), that the introduction of a person as an exhibit in a criminal case, where identification is in issue, is not only appropriate but may even attain the level of providing solid probative evidence crucial to the ultimate determination of whether guilt has or has not been proven.
While case law is practically nonexistent, the practice of introducing a person into evidence for the purpose of permitting the jury to see for itself whether he more closely resembles the perpetrator than does the accused, follows traditionally accepted procedure governed by the law of “real evidence.”
Finally, we note that all relevant evidence is admissible unless a valid reason for its exclusion is shown (McCormick, Evidence [2d ed], § 184).
*1088 Since the courts have, as an evidentiary matter, permitted a person to be introduced as an “exhibit” in civil cases, there is no reason to assume that a similar procedure should be proscribed in criminal cases. On the contrary, CPL 60.10 states that “Unless otherwise provided by statute * * * the rules of evidence applicable to civil cases are * * * also applicable to criminal proceedings.”
Accordingly a person may be introduced as an “exhibit” in a criminal case as evidence relative to the issue of identification.

. The jury in the case ultimately rejected the defense’s contention and convicted the defendant of murder in the second degree.

. McCormick, Evidence (2d ed), § 212 et seq.; 4 Wigmore, Evidence (Chadbourn rev, 1972), § 1150 et seq.; Decennial Digest, Key Nos. Evidence 188-195, Crim Law 404 (1-4), Trial 28, 375; 32 CJS, Evidence, § 601 et seq.; Fisch, NY Evidence (2d ed), § 131 et seq.