Kelly Joe CHAMBLISS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–81–00038–CR.

Court of Appeals of Texas,
El Paso.

May 12, 1982.

Rehearing Denied June 9, 1982.

Stubbeman, McRae, Sealy, Laughlin & Browder, Mary Lou Cassidy, Midland, for appellant.

Vern F. Martin, Dist. Atty., Robert L. Sutphen, Asst. Dist. Atty., Midland, for appellee.

Before STEPHEN F. PRESLAR, C. J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This appeal is from a conviction of murder where the jury assessed the punishment at confinement for 99 years. We affirm.

In his fifth ground of error, the Appellant contends that the evidence is insufficient to sustain the conviction, and we will first dispose of this point.

Viewing the evidence in a light most favorable to the verdict, a recitation of that evidence shows that Army Sergeant J. B. England was discovered shot and bleeding beside his van on the right shoulder of the west-bound lane of Interstate 20 in Midland County. This occurred at 4:00 a. m. on July 18, 1978, and he died from the gunshot wounds shortly thereafter. Sheriff's deputies testified that the driver's window had been shattered and that broken glass fragments were found in the right lane of the highway some 185 feet behind the van.

The next phase of the testimony concerned the arrest of the co-defendant Raymond Mathis. He was arrested after a high-speed chase in Ward County on the morning of July 18, while headed east back toward Midland. A loaded lever-action .22 Magnum rifle was found between the driver's seat and the door, and two .22 rifles were in the trunk of the car. Several live rounds and three spent shell casings were in the car, one being a Magnum casing and the other .22 long rifle casings. A package of cigarettes was also in the vehicle with the Appellant's fingerprint on it. Bullet fragments from the deceased's body could not be linked to any of the guns, although one appeared to be from a .22 caliber, and a fragment from the floor of the van belong-ing to the deceased could have been from the .22 Magnum rifle.

As to the activities of Mathis and Appellant prior to the shooting, the evidence was to the effect that both had been drinking heavily; that in the early evening of July 17, the two had gone to Russell Rhyne's home where Mathis bought one .22 caliber rifle that was later found in the Mathis car; and that they then went looking for bullets for the gun. Rhyne testified that after the two had left, they returned complaining that the gun did not work; that Rhyne accompanied them to a caliche pit to fire the rifle after Appellant fixed the weapon; and that they went to the house of Bobby Brothers and then to the house of Richard Hendricks to get more bullets. Rhyne testified to a fake robbery incident where Mathis got out of the car with the gun and approached A. J. Vigil to "scare him."

Paul Trammell testified that two rifles were stolen out of his pickup during the night and these were later identified as the other two that were found in the Mathis car.

A cashier of the Warfield truck stop testified that Mathis, Appellant and two girls came in to eat at 1:30 a. m. on July 18. Richard Hendricks testified that Mathis and Appellant came to his house around 3:00 a. m. seeking bullets. When Hendricks asked what he needed them for, Mathis said, "We want to waste somebody."

Donald Ray Wallace testified that Mathis and Appellant visited the home of Bobby Brothers early on July 18 asking for bullets, as they said they were going rabbit hunting. They left, and it was in the afternoon of July 18 that he next saw the Appellant. Appellant then left, but returned at 10:30 that night, at which time the Appellant admitted to Brothers that he had done the shooting, saying that he did it because when they tried to pass the van, the driver would not let them pass. He said that they drove up beside the van and the Appellant shot the driver. The Appellant and Mathis turned around and returned to the van where it had stopped, and the Appellant

shot the man again. Appellant asked Brothers to help him get to Canada, and Brothers left to make arrangements to get Appellant out of the country. Instead, Brothers went to the sheriff's office and reported the admission. When Brothers returned, the sheriff's deputy was with him and the Appellant was arrested.

Bobby A. Brothers testified next, and his story was essentially the same as that given by Wallace; that at the meeting at night the Appellant admitted to him as doing the actual shooting; and that he went to the sheriff's office to report what he had heard.

Gary Dean Chambers, who was the brother-in-law of Mathis, testified that Mathis and the Appellant had come to his home at about 5:00 a. m. on the morning of July 18 to talk to his wife, who was Mathis' sister. He heard part of the conversation where Mathis had told his sister that he had to get out of town and wasn't coming back.

Gary Dwayne King was a cellmate of the Appellant in the Midland County jail, and he was the State's final witness. He testified that Appellant had told him in jail that he had shot Sergeant England. The details related by King were these: Mathis and Appellant went to a Seven-Eleven to get beer, and began arguing with several Mexicans. After this incident, they went somewhere to get some "speed" and then went to "Bob's house and gave him some speed. The next stop was to buy a gun from a friend. They then took two girls to dinner at the Warfield Truck Stop. Mathis wanted to rob the truck stop, but Appellant talked him out of it. They took the girls home, and picked up three-quarters of a box of bullets there. They then went riding around shooting at road signs. The gun jammed, and they woke up the guy who sold it to them to fix it. However, Appellant finally was able to unjam the gun. They had three to four guns, and Appellant said he had stolen the others. Mathis and Appellant then decided to go rob someone. They saw a van parked at a rest stop, and they knocked on the window to wake up the occupant. They asked him which way it was to Odessa. The person in the van said

not to disturb him. Mathis and Appellant started to drive off in the left lane and the van followed. They let the van catch up to them in the right lane, and Appellant shot through the window of the van. The van went off the highway. They turned the car around and returned to the van. The man was still alive, so Appellant shot him again. They then drove into Midland to talk to Mathis' sister and family. They talked to his sister and his father to try to get money, but they did not have any money. They then started driving to El Paso. Mathis decided to turn back. He let Appellant out to hitchhike. Appellant was unable to get a ride to El Paso, so he returned to Midland where he was arrested at Bobby Brothers' house.

■ We conclude that the State proved the guilt of the Appellant beyond a reasonable doubt. The Appellant argues that each of the witnesses who testified as to the admissions made by the Appellant were each suspect because of deals made with the prosecution, because of previous convictions, or because of their use of narcotics. There was evidence that no deal had been made and that the witnesses were telling the truth. The jury resolved the conflict in the evidence, if any, against the Appellant. Appellant's fifth point is overruled.

■ Appellant asserts in his first point that the trial court erred in admitting over objection the testimony of Gary Dwayne King, the Appellant's cellmate, as it was a violation of Article 38.22, V.A.C.C.P. The 1977 amendment to Article 38.22 is involved, and the Appellant argues that the oral statement of the accused made while "in jail or other place of confinement or in the custody of an officer" is still inadmissible unless offered for impeachment purposes only. We do not construe the new statute that narrowly and believe that the Legislature intended to overrule the old rule as discussed in *Easley v. State*, 493 S.W.2d 199 (Tex.Cr.App.1973). The new statute was examined in *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981). That case on its facts is limited to the introduction of such testimony in an impeachment setting,

but by the language in the opinion indicates that such testimony is admissible as direct evidence provided it is voluntary, does not stem from custodial interrogation, and was not obtained by the cellmate while acting as an agent of law enforcement officials. *See*: Bubany, The Texas Confession Statute: Some New Wine in the Same Old Bottle, 10 Tex.Tech L.Rev. 67, 73–76 (1978). The testimony before us passes the requirements, and Appellant's first point is overruled.

Ground 2 complains of the trial court's denial of a new trial on the basis of jury misconduct. A juror approached a State's witness, the victim's sister, to get her address so that he might later write an apology on behalf of all Midlanders that her brother had been killed there. The juror testified that he did not believe he was discussing the case, and that, at that point, he had made no decision on the guilt or innocence of the accused. He further stated that his brief conversation had no effect on his deliberations.

 New trials, in cases of felony, shall be granted the defendant where a juror has conversed with any person in regard to the case. Tex.Code Crim.Pro.Ann., Article 40.03(7) (Vernon 1979). If a juror converses with any unauthorized person about a case, injury to the accused is presumed. *McMahon v. State*, 582 S.W.2d 786, 793 (Tex.Cr.App.1978) *cert. denied*, 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979). However, this presumption is rebuttable. If it is shown that the case was not discussed, or that nothing prejudicial to the accused was said, then the verdict will be upheld. In this case, the discussion did not involve the issues of the case, or harm Appellant. Ground of Error No. 2 is overruled.

Ground of Error No. 3 asserts that the trial court should have disqualified the prosecutor for failure to report the incident discussed above. Appellant suffered no harm from such failure or the court's refusal to disqualify the prosecutor. Ground of Error No. 3 is overruled.

Appellant's fourth ground contends that the trial court erred in denying Appellant's Motion for Change of Venue. Appellant urges that the prior trial and conviction of Mathis received such extensive publicity in Midland County that Appellant was unable to receive a fair trial.

 The applicant for a change of venue has a heavy burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. *Mitchell v. State*, 524 S.W.2d 510, 514 (Tex.Cr.App. 1975). Where the evidence is in conflict, it is generally not an abuse of discretion to deny the motion. *Chappell v. State*, 519 S.W.2d 453, 457 (Tex.Cr.App.1975). Appellant has not shown that he was forced to accept an objectionable juror, nor is there a transcript of the voir dire examination for this Court to inspect. Further, Appellant's Motion for Individual Examination of Non-Capital Veniremen was granted, giving him greater opportunity to avoid bias. No harm has been shown, and Ground of Error No. 4 is overruled.

The sixth ground urges error in the trial court's denial of Appellant's Motion for Continuance to locate a potentially valuable witness. The State takes the position that this witness would have added nothing to the Appellant's case that was not brought out through other testimony.

When the co-defendant Mathis was arrested, he was accompanied by Robert Crane, a hitchhiker. Crane had told the sheriff's department that Mathis had admitted to him to doing the shooting. This testimony was out of the presence of the jury. Appellant urges error in the court's refusal to grant a continuance while the defense attempted to locate this witness.

 Appellant's Motion for Continuance does not comport with the requirements of Article 29.06 of the Code of Criminal Procedure. There was no showing that diligence was used to procure the attendance of the witness, the material facts expected from the witness, the lack of the Appellant's consent to this witness to be absent, or a reasonable expectation that attendance of the witness could be secured during the present term of the court. Fur-

ther, a Motion for New Trial is a prerequisite to raising this ground of error on appeal. *Mitchell v. State*, 466 S.W.2d 786, 787 (Tex.Cr.App.1971). Appellant filed such a motion, but did not complain of the court's denial of the continuance. Finally, the Appellant fails to show how the hearsay nature of the proposed testimony could be overcome. Nothing is presented for review, and Ground of Error No. 6 is overruled.

Ground No. 7 complains that the trial court erred by admitting expert ballistics testimony because there was inadequate proof of the chain of custody of the evidence tested, and because such testimony was hearsay.

Mrs. Judy Scoggin, a Department of Public Safety employee, did some initial tests on the real evidence involved in this case. She was unavailable to testify. Another expert testified as to the chain-of-custody of this evidence. This witness testified that he also conducted tests and reached the same conclusion as those of the primary examiner.

Since the witness actually conducted the tests to which he testified, such evidence was not hearsay. Further, where there is no evidence to show that the material has been tampered with or altered, the State is not required to prove the chain-of-custody by producing every party which has had possession of such evidence. *Yantis v. State*, 476 S.W.2d 24, 29 (Tex.Cr.App.1972). The evidence was properly admitted, and Ground of Error No. 7 is overruled.

Appellant's eighth ground of error attacks the propriety of reputation testimony given by two policemen at the punishment phase. On voir dire, these officers indicated that their knowledge of the Appellant's reputation as a peaceful and law-abiding citizen came from their conversations with other police officers. They did not know whether these other officers lived in the same community as the Appellant. Furthermore, they admitted their conclusions were based on learning of specific acts of the Appellant.

It is proper to permit police officers to testify as to a defendant's reputation as a peaceful and law-abiding citizen when the officers base their opinions on discussions with fellow officers and persons from the same community. *Hubbard v. State*, 496 S.W.2d 924, 926 (Tex.Cr.App. 1973). It is not necessary that the witness discuss reputation with persons living in the appellant's exact community so long as such persons know the accused in the same general area where he lives. *Ables v. State*, 519 S.W.2d 464, 466 (Tex.Cr.App.1975). Although officers may not testify to specific acts, they may use specific acts for the basis of determining the appellant's reputation. *Crawford v. State*, 480 S.W.2d 724, 726–727 (Tex.Cr.App.1972). Ground of Error No. 8 is overruled.

Ground of Error No. 9 asserts that the trial court erred in denying Appellant's Motion for Mistrial when the victim's sister approached the Appellant, held out a photograph, and said, "Would y'all like to see the person you killed?" This incident occurred during a recess, shortly before court resumed. There was testimony that all jurors were in the deliberation room at that time. As the trial judge was in a superior position to determine whether any juror observed this scene, his denial of the Motion will not be disturbed. Ground of Error No. 9 is overruled.

Appellant's tenth ground asserts error in the trial court's refusal to permit the co-defendant Mathis to testify after he indicated on voir dire that he would assert his privilege against self-incrimination. At that time, Mathis had been convicted and his case was pending on appeal.

The defense may not call a witness to the stand merely to force him to claim his privilege against self-incrimination in the presence of a jury. *Horner v. State*, 508 S.W.2d 371, 372 (Tex.Cr.App. 1974). This is what Appellant wished to do, so that the jury might speculate that Mathis, and not he, shot Sergeant England. The case against Mathis has not been prosecuted to a final conclusion because appeal was still pending; he retained his Fifth Amend-

ment right. *Davis v. State*, 501 S.W.2d 629, 630–631 (Tex.Cr.App.1973). The action of the trial court was correct, and Ground of Error No. 10 is overruled.

Appellant's last ground is that the trial court erred in not granting a mistrial after the prosecutor stated during direct examination, "I will show you now for appellate purposes only and for the purposes of the record, do you recognize that picture?" Appellant contends the term "appellate purposes" implied a conviction and was therefore a comment on the evidence. This statement, hidden in the midst of a question, could not have caused any reasonable juror to be improperly persuaded in this case to find the Appellant guilty. Ground of Error No. 11 is overruled.

The judgment of the trial court is affirmed.