No. 53,737

STATE OF KANSAS, *Appellee,* v. JAMES K. CRUMM, JR., a/k/a
JAMES M. HOBSON, *Appellant.*

(654 P.2d 417)

Opinion filed December 3, 1982.

*Edward V. Byrne,* of Olathe, argued the cause and was on the briefs for appellant.

*David D. Belling,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by James K. Crumm, Jr., from his conviction of first-degree murder, K.S.A. 21-3401. He was convicted by a jury in Miami District Court of the shotgun slaying of his stepbrother, Christen A. Hobson. The only defense asserted was that of insanity. On appeal, defendant claims error in the exclusion of evidence, error in the cross-examination of one of the

defense medical witnesses, and error in refusing a requested instruction.

Since the defendant does not challenge the sufficiency of the evidence to support the verdict, a brief statement of the facts will be sufficient. On April 17, 1980, Ed Hobson reported to the Overland Park police department that his 13-year-old son, Christen, was missing. A few days later, Christen's wallet was found in the Metcalf South shopping center. No further clues were found as to Christen's whereabouts until May 3, 1980, when two young fishermen found a body in a shallow grave near Bull Creek in rural Miami County. Within hours the body had been identified as that of Christen Hobson. Three people were taken into custody and charged with the homicide: the defendant, James Crumm, his mother, Sueanne Hobson, and his friend, Paul Sorrentino. Defendant gave a detailed statement to the officers, admitting that he and Sorrentino, at the urging of Sueanne Hobson, took Christen from his Overland Park home, drove him to Miami County, caused him to dig his own grave, shotgunned him down at close range, and covered the body with earth. Defendant and Sorrentino then returned to Johnson County. Defendant disposed of the shovel used to dig and cover the grave, and he disposed of his stepfather's shotgun which he had taken earlier that day. Defendant also stated that his mother promised to buy him a car and to pay for repairs for Sorrentino's motorcycle as their payment for killing Christen. The extensive psychiatric testimony presented at trial dealt with defendant's history, his suggestibility, his severe alcoholism, his perplexing relationship with his mother, and practically every other aspect of his personality. Three psychiatrists testified for the defense and expressed opinions that the defendant did not know the difference between right and wrong at the time of the homicide. Two psychiatrists testified for the State, and each expressed the opposite opinion: that the defendant was sane at the time of the homicide, knew the difference between right and wrong, understood the nature and quality of his acts, and knew that the killing was wrong. The jury brought in a verdict of guilty as charged.

Defendant's first claim of error is that the trial court erred in excluding certain testimony of witnesses Sueanne Hobson, Gerald A. Colwell, and Jane Young. We will consider the testimony of Sueanne Hobson, defendant's mother, first. Mrs. Hob-

son had been arrested, questioned, and charged originally, but the charges had been dismissed and she was not charged with any offense at the time of this defendant's trial. She was, however, aware that she could still be charged with the murder of her stepson, and in fact she was later charged and convicted of that offense. When she was called by the defendant as a witness at this trial, she was accompanied by her attorney, Hugh Kreamer, of Olathe. Counsel, including Mr. Kreamer, met in chambers and took up a motion in limine filed by the State, in which the State sought to have the court instruct defense counsel not to ask Mrs. Hobson about any matters which might incriminate her and which might be within her Fifth Amendment privilege. Mr. Kreamer stated emphatically that Mrs. Hobson would not testify as to any of the events leading up to the murder and that Fifth Amendment objections would be raised to any questions along that line. The trial court sustained the State's motion and no such questions were asked. Mrs. Hobson did testify in the defendant's behalf, but her testimony concerned defendant's early life and did not touch on the events immediately prior to or connected with the homicide.

Defendant now contends that the six-hour statement which Sueanne Hobson gave to the Overland Park Police Department should have been received in evidence. Included in the record before us is what appears to be a partial transcription of that statement; it consists of about nine letter-sized pages and is obviously but a small part of her statement. Neither the complete statement nor this partial transcription were ever marked as an exhibit in this trial; neither was ever offered in evidence; neither was ever identified. Neither the officers who took the statement nor the transcriber were ever called as witnesses. Under the circumstances, the trial court did not commit error in failing to receive the statement into evidence.

Defendant also contends that his counsel should have been permitted to question Mrs. Hobson about her statement and about the facts leading up to the homicide. There are several reasons why defendant's argument in this regard is not persuasive. Mrs. Hobson was not charged with the murder of her stepson at the time of this trial, but the possibility of charges being brought against her was very real. The statement which she allegedly gave was not offered in evidence, and it was not shown

to be a free and voluntary statement. No witnesses were called to testify about it. She had not been tried and convicted of homicide; she had not pleaded guilty to any charge; she had not acknowledged that her statement was voluntary; and no court had determined that it was admissible against her. The trial judge was aware of and indeed necessarily sensitive to the right of the witness to decline to answer questions which might well incriminate her. In ruling on the motion, the judge said:

"I don't think it is proper to require this witness to testify to matters which may tend to show any participation or any influence on her part in the actual commission of the crime."

The witness, through counsel, had clearly informed the judge and trial counsel that the witness would not answer any questions which might incriminate her, but would refuse to answer, based on the Fifth Amendment. The effect of questioning by counsel would have been to require the witness to invoke her privilege in open court before the jury. Clearly, this would have been improper.

In *State v. Day,* 400 So. 2d 622 (La. 1981), the State sought to interrogate the defendant's wife after she had informed court and counsel that she did not want to testify against her husband. The trial court ruled that Mrs. Day had to exercise her privilege in front of the jury. Defendant, on appeal, claimed that this was error. The Louisiana Supreme Court said:

"At trial and during the State's opening remarks, the prosecutor, Ralph Roy, announced that he would subpoena Mrs. Day as a witness for the State. Subsequently, with the jury retired, Mrs. Day stated 'I don't want to testify against him.' Nevertheless, the court ruled that Mrs. Day had to exercise her privilege in front of the jury. Appellant specifies this as error.

"*State v. McMullan,* 223 La. 629, 66 So. 2d 574 (1953), held that it was not error for a trial court to require a witness claiming privilege to exercise same before the jury.

"*State v. Haynes,* 291 So.2d 771 (La. 1974), however, citing American Bar Association Standards for Criminal Justice, Prosecution Function 5.7, disapproved of the practice sanctioned by *McMullan.* It is noteworthy that the prosecutor in the present case, who was also the prosecutor in *Haynes,* intentionally chose to ignore the rule change initiated by this court in *Haynes.*

"In *State v. Berry,* 324 So.2d 822 (1975), this Court stated at 830:

" 'It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege. American Bar Association Standards of Criminal Justice, Relating to the Prosecution Function, Standard 5.7(c), and Relating to the Defense Function, Standard 7.6(c) (1971).

" 'As the commentaries to these standards indicate, claims of privilege are preferably determined outside the presence of the jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination as to its assertion. (The commentaries also note the impropriety of either counsel arguing any inference from the failure of another to call a witness, if the failure to do so is known to be based on the witness's claim of privilege.) For similar reasons, the courts have uniformly rejected a defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege before the jury.'

"Clearly, if a defendant may not force a witness of the State to exercise his privilege before the jury and if it is improper for the defendant to urge any inference in such a case, these principles must also apply to the State.

"We hold that when the State knows that a witness will exercise a valid privilege, it is reversible error to require the witness to exercise his privilege in front of the jury." 400 So. 2d at 623-24.

Similarly, when a defendant wished to call a witness and require the witness to assert her Fifth Amendment privilege before the jury, the Louisiana court held that it was not error for the trial court to examine the witness outside the presence of the jury, and not require the witness to invoke the privilege before the jury. In that case, *State v. Johnson,* 404 So. 2d 239 (La. 1981), the court said:

"It is contended that failure to force the witness to invoke her privilege before the jury restricted the defendant's constitutional right to present a defense in violation of the Sixth Amendment to the United States Constitution . . . . [W]hen it is clear to the trial court that the silence of a witness is justified as to a particular evening because any testimony could be injurious, a question by question [assertion] of the privilege is unnecessary. [Citation omitted.] It is improper to call a witness to the stand solely to impress upon the jury the fact that the witness will claim the privilege against self-incrimination. [Citations omitted.]

"Once it was determined that witness Allen would invoke the Fifth Amendment as to all questions relative to August 23 or 24, the trial court did not err in refusing to have her testify before the jury. . . . The better policy is an examination outside the presence of the jury such as that conducted by the trial court here. See *United States v. Lacouture,* 495 F.2d 1237 (5th Cir. 1974); *United States v. Johnson,* 488 F.2d 1206 (1st Cir. 1973); and *United States v. Bowman,* 636 F.2d 1003 (5th Cir. 1981). The trial court did not err in not requiring the witness to invoke the privilege in front of the jury." 404 So.2d at 246.

In *Chambliss v. State,* 633 S.W.2d 678 (Tex. App. 1982), the defendant claimed error because the trial court refused to permit him to call a codefendant to testify, after the codefendant indicated that he would assert his privilege against self-incrimination. The court said:

"The defense may not call a witness to the stand merely to force him to claim his privilege against self-incrimination in the presence of a jury. *Horner v. State*, 508 S.W.2d 371, 372 (Tex. Cr. App. 1974). This is what Appellant wished to do, so that the jury might speculate that Mathis, and not he, shot Sergeant England. The case against Mathis has not been prosecuted to a final conclusion because appeal was still pending; he retained his Fifth Amendment right. *Davis v. State*, 501 S.W.2d 629, 630-631 (Tex. Cr. App. 1973). The action of the trial court was correct, and Ground of Error No. 10 is overruled." 633 S.W.2d at 683-84.

A Massachusetts case discusses the interrelationship between the right of a defendant to call witnesses in his behalf, and the right of the witness to invoke the Fifth Amendment. In *Com. v. Hesketh*, 386 Mass. 153, 434 N.E.2d 1238 (1982), the Supreme Judicial Court of Massachusetts said:

"Immediately before trial, defense counsel informed the trial judge that he planned to call Roberts as a defense witness. Defense counsel told the judge that it was his understanding that Roberts might invoke the privilege against self-incrimination. He said that he planned to call Roberts as a witness before the jury. Counsel for the defendant told the judge that he had a right to have Roberts invoke the Fifth Amendment privilege before the jury. . . .

. . . . .

"After the prosecution completed its case, the judge conducted a voir dire outside the presence of the jury to determine whether Roberts intended to invoke the privilege against self-incrimination and whether the privilege was properly invoked. If Roberts planned to take the Fifth Amendment, the judge ruled that Roberts would not be allowed to do so in front of the jury, and that Roberts could not be called as a witness merely to invoke the privilege.

"Defense counsel agreed that the privilege was properly invoked. However, he objected to that portion of the ruling which did not permit Roberts to invoke the privilege in front of the jury. Citing art. 12 of the Declaration of Rights of the Massachusetts Constitution, and the Sixth Amendment to the United States Constitution, the defendant's attorney argued that Hesketh had a right to have Roberts invoke the privilege against self-incrimination in front of the jury. The judge did not agree and denied the defendant's request to have Roberts invoke the privilege before the jury. There was no error.

" '[T]he right to confront and to cross-examine [witnesses] is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' *Commonwealth v. Francis*, 375 Mass. 211, 214, 375 N.E.2d 1221 cert. denied, 439 U.S. 872, 99 S.Ct. 205, 58 L.Ed.2d 185 (1978), quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045-1046, 35 L.Ed.2d 297 (1973), and cases cited. 'The Fifth Amendment privilege against self-incrimination, when properly invoked, is clearly one of those interests.' *Commonwealth v. Francis, supra.* Therefore, the Sixth Amendment does not give the defendant the right to have a witness invoke the privilege against self-incrimination in front of the jury.

"The Sixth Amendment 'must be considered in light of its purpose, namely to produce testimony for the defendant. . . . Calling a witness who will refuse

to testify does not fulfill [that] purpose.' *United States v. Roberts,* 503 F.2d 598, 600, (9th Cir. 1974), cert. denied, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *Dodd v. State,* 236 Ga. 572, 576, 224 S.E.2d 408 (1976). Further, a witness's reliance on the Fifth Amendment 'may have a disproportionate impact upon the minds of the jurors.' *People v. Thomas,* 51 N.Y.2d 466, 472 [434 N.Y.S.2d 941, 415 N.E.2d 931] (1980). 'The jury may think it high courtroom drama of probative significance when a witness "takes the Fifth." In reality the probative value of the event is almost entirely undercut by the  . ·.  . fact that it is a form of evidence not subject to cross-examination.' *Bowles v. United States,* 439 F.2d 536, 541-542 (D.C. Cir. 1970), cert. denied, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). Because the impact of a witness's refusal to testify outweighs its probative value, '[i]t is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense.' *Bowles v. United States, supra* at 541. *United States v. Lacouture,* 495 F.2d 1237 (5th Cir.), cert. denied, 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974)." 434 N.E.2d at 1241-1242.

The rule is also followed in New York where, in *People v. Diaz,* 111 Misc. 2d 1083, 445 N.Y.S.2d 888 (1981), it is said:

"[D]efendant's counsel considered calling Miguel E. as a witness, but the latter, awaiting trial on an unrelated kidnapping charge in the Bronx, chose to exercise his Fifth Amendment right against self-incrimination and refused to testify.

"Accordingly, forearmed with this knowledge, this court refused to permit Miguel E. to be called as a witness. (See *People v. Thomas,* 51 N.Y.2d 466, 434 N.Y.S.2d 941, 415 N.E.2d 931 [1980]; *People v. Sapia,* 41 N.Y.2d 160, 391 N.Y.S.2d 93, 359 N.E.2d 688 [1976].) The court, in its discretion may make this determination in order to prevent the jury from drawing any inferences from the witness' assertion of his Fifth Amendment rights (*U.S. v. Martin,* 526 F.2d 485 [10th Cir., 1975])." 111 Misc. 2d at 1084, 445 N.Y.S.2d at 889.

And see *Matter of Tyrone S.,* 91 Misc. 2d 1055, 399 N.Y.S.2d 362 (1977).

The courts of our sister state of Missouri hold that it is within the discretion of the trial court to determine whether a witness who the court knows intends to invoke the Fifth Amendment privilege should be permitted to take the stand. See *State v. Benson,* 633 S.W.2d 200, 201 (Mo. App. 1982); *State v. Hustead,* 615 S.W.2d 556, 559 (Mo. App. 1981); and *State v. Wright,* 582 S.W.2d 275, 282 (Mo. 1979).

Upon examination of the record before us, it is readily apparent that Sueanne Hobson had the right, under the Fifth Amendment to the United States Constitution, to refuse to answer questions which would incriminate her. The questions proposed by defense counsel were such that the witness would have had to invoke the privilege, before the jury, had the questions been propounded.

Forbidding defense counsel to ask questions which the witness would refuse to answer did not deprive defendant of his Sixth Amendment right to call witnesses on his behalf. We agree with the rationale of the Louisiana, Texas, Massachusetts, New York and Missouri cases cited above. Under the circumstances of this case, we hold that the trial court did not abuse its discretion in refusing to permit the witness to be asked questions which she had stated that she would not answer, merely for the purpose of having the witness assert her Fifth Amendment privilege in the presence of the jury. We find no error.

Additionally, we have examined the partial transcription of the witness's statement which appears among the papers forwarded to us with the record on appeal. In it, Mrs. Hobson denies domination over her son, denies that she hired her son and Sorrentino to kill her stepson, and denies that she knew beforehand that the killing was to take place. Her partial statement does not indicate or tend to show insanity on the part of the defendant. In short, that partial statement does not have substantial probative value on the question of insanity.

Next, we turn to the trial court's ruling on proffered testimony of the witnesses Gerald Colwell and Jane Young. Mr. Colwell, a counselor in Shawnee Mission South High School in Overland Park, Kansas, testified at length about many visits Mrs. Hobson made to his office with reference to her son's lack of academic progress. The defendant also wished to have this witness relate his opinion as to the relationship between Mrs. Hobson and her son, his impression of Mrs. Hobson, and his opinion as to the scholastic ability—or lack of scholastic ability—on the part of the defendant. The trial court sustained objections to this evidence. Mrs. Young, a juvenile probation officer in Johnson County, had worked with the defendant during the six weeks before the murder of Chris Hobson. She testified about her contacts with the defendant, and the trial court permitted her to testify about her observations of the defendant, but sustained an objection when the defense attempted to have her testify that she had made a recommendation that the defendant receive psychiatric evaluation and consultation.

K.S.A. 60-456(a) provides:

"If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds

(*a*) may be rationally based on the perception of the witness and (*b*) are helpful to a clearer understanding of his or her testimony."

We have often held that this section vests a wide discretion in the trial court over the admission of lay opinion testimony. See *State v. Amodei,* 222 Kan. 140, 146, 563 P.2d 440 (1977), and *State v. Craig,* 215 Kan. 381, 383, 524 P.2d 679 (1974). The trial court apparently based his exclusion of the proposed testimony of these witnesses at least partially upon lack of proper foundation. The defendant was permitted to develop his evidence and thoroughly present his defense. We find no abuse of discretion in the trial court's rejection of this proffered testimony, and no error.

The defendant's next claim of error is predicated upon the following portion of the record, which occurred at the close of the State's cross-examination of Dr. G. Charles Welsh, a psychologist called by the defendant:

"Q. [By Mr. Tatum] James Hobson, in your opinion, as he sits here, is psychotic depressive in that stage; is that right?

"A. He has a major depression with psychotic features.

"Q. Would he be legally responsible for his acts if he did something today?

MR. BYRNE: Your Honor, that is such a vague, ambiguous, speculative question.

MR. TATUM: I will withdraw the question.

MR. BYRNE: I move to strike the question because I think it was intentionally asked, knowing that it was objectionable.

MR. TATUM: I did not ask it knowing that it was objectionable, Your Honor; if he wants to answer it, I would be happy to have him to.

THE COURT: I would have overruled the objection, if you had persisted in it.

MR. BYRNE: I have nothing further.

THE COURT: You may step down, Doctor.

(Witness excused.)"

The defendant maintains that the question to which he objected seriously prejudiced him since its implication to the jury was that if the defendant were acquitted on grounds of insanity he might commit another crime and plead insanity. The defendant seeks to analogize this comment to the type of comments condemned in *State v. Blake,* 209 Kan. 196, 495 P.2d 905 (1972). In *Blake* the trial judge questioned a defense psychiatrist who had testified that the defendant was "insane" at the time of the crime. The court's examination consisted of an intensive inquiry into the likelihood of the defendant committing similar crimes in the future. 209 Kan. at 203-204. The questions were all answered

by the doctor and the answers indicated that future violence was possible. This was coupled with an instruction which informed the jury that a person committed to the state hospital could be released after thirty days' notice. We found reversible error, saying:

"This instruction, taken with the fruits of the court's interrogation, could well lead the jury to conclude that a not-guilty-by-reason-of-insanity verdict could mean putting a dangerous killer on the street within thirty days." 209 Kan. at 206.

The impact of the question by the prosecutor in the case at bar does not even approach the prejudicial impact of the questioning and instructions in *Blake.* The question here was asked, objected to, and withdrawn. Though the inquiry was irrelevant on the issue of defendant's insanity at the time the crime was committed, the defendant has not shown substantial prejudice despite the trial court's comment indicating that the question was not improper. The trial court gave an instruction telling the jury that none of his rulings were to be taken as an expression of an opinion on the evidence. We find no prejudicial error.

Finally, defendant contends that the trial court erred in refusing to give a burden of proof instruction on the insanity defense. The defendant offered the following instruction, which was refused by the trial court:

"Once evidence has been introduced indicating the possible insanity of the defendant, the burden of proving the defendant is sane rests with the State, the same as with all other elements of the alleged crime, that is to say, the State must prove the defendant is sane beyond a reasonable doubt."

This is a correct statement of the law. See *State v. Bates,* 226 Kan. 277, 281, 597 P.2d 646 (1979); *State v. Chase,* 206 Kan. 352, 358, 480 P.2d 62 (1971); and *State v. McBride,* 170 Kan. 377, 381, 226 P.2d 246 (1951). We find no case, however, and we are cited none by counsel, which holds that this instruction is necessary or that it must be given in every case in which an insanity defense is raised. The Pattern Instructions for Kansas, PIK Crim. 52.08, specifically recommends that no burden of proof instruction be given relative to any asserted affirmative defense, including that of insanity.

The trial court instructed the jury that the burden of proof is on the State to prove the defendant guilty, and that if the jury has a reasonable doubt as to the mental capacity of the defendant at the time of the alleged commission of the offense, then the jury

should find the defendant not guilty because of insanity. The defendant admitted killing Chris Hobson; the major portion of the testimony admitted at trial dealt with the defendant's mental competency at the time the offense was committed. The instructions given properly placed the burden of proof on the State. As we said in *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 581 P.2d 372 (1978):

"The refusal by the trial court to give a requested instruction does not result in reversible error when the substance of the instruction is contained in other instructions." Syl. ¶ 5.

"The fact that a requested instruction is technically a correct statement of the law does not make the trial court's refusal to give the instruction reversible error." Syl. ¶ 6.

We find no instructional error.

The judgment is affirmed.