■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

TENNYSON GUNTHER, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Berkowitz, J.), rendered May 8, 1989, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law and as a matter of discretion, and a new trial is ordered. The facts have been considered and are determined to have been established.

The defendant in this case was arrested for the May 23, 1988, sale of crack cocaine to an undercover police officer. The testimony adduced at trial on behalf of the People indicated that as the undercover police officer entered a park in Queens, he was gestured to by the codefendant, Bruce Anderson. The undercover police officer told Anderson, who was then standing alongside the defendant, that he was looking for a "nickel". Anderson responded, "We only have dimes left". The undercover police officer then handed Anderson $10 of prerecorded money. Anderson handed the money to the defendant, who then passed to Anderson a vial of crack, which Anderson gave to the undercover police officer. After another undercover police officer purchased marihuana from a third individual, one McClean, the officers radioed their field team describing the defendant and the other two individuals. The defendant, Anderson, and McClean were subsequently arrested and the undercover police officers made confirmatory identifications of the three men. When searched pursuant to the arrest, the defendant was found in possession of $40, $10 of which was prerecorded money.

In his defense, the defendant contended that he was the victim of mistaken identification in that the person who was allegedly selling drugs with Anderson was McClean, whose appearance was similar to the defendant and who was arrested and subsequently identified at about the same time and in the same location as the defendant and Anderson. The defendant explained that immediately prior to his arrest, he had received the $10 of prerecorded money from McClean, who had asked the defendant for change when the defendant was walking through the park.

Viewing the evidence in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual

review power, we are satisfied that the verdict of guilt was not against the weight of the evidence *(see,* CPL 470.15 [5]). In addition, we find no merit to the defendant's challenge to the hearing court's denial of his request to suppress the prerecorded money, which was properly found to be the product of a search incident to a lawful arrest.

Nevertheless, we agree with the defendant that he was deprived of a fair trial by the prosecutor's cross-examination of him. The clear intent of the questioning was to show the defendant's propensity to commit the instant cocaine sale based on his prior criminal conduct. Despite the defendant having admitted to two prior convictions for selling marihuana on January 5, 1987, and November 27, 1987, the prosecutor began her cross-examination by asking the defendant, "So, Mr. Gunther, basically you're admitting that you're [a] drug dealer; is that correct?". The prosecutor then pursued her strategy of attempting to improperly imply that the defendant was currently in the business of selling drugs by an extensive inquiry into where and how the defendant sold marihuana, who his supplier was, how he packaged the marihuana, where he got his packaging equipment, where he kept his marihuana and how much money he made from selling marihuana. Less than three transcript pages of the fourteen-page cross-examination by the prosecutor related to the defendant's alleged involvement in the instant cocaine sale. While we are mindful that zealous advocacy can often innocently cross the bounds of the proper scope of cross-examination, we are equally mindful that a defendant's right to a fair trial is not to be abridged by what we can only perceive to be a deliberate and calculated strategy to convict on the basis of improper and prejudicial hyperbole *(see generally, People v Alicea,* 37 NY2d 601, 605; *People v Duffy,* 36 NY2d 258, 262, *mod* 36 NY2d 857, *cert denied* 423 US 861). Although not all of the questioning was the subject of an objection, and some objections were sustained, we find that a reversal is warranted in the exercise of our interest of justice jurisdiction. Contrary to the People's contentions, the trial court's instructions during its charge were not adequate to dispel the prejudice to the defendant, and the proof of guilt, while legally and factually sufficient, was not overwhelming, in light of the sharp conflict in the testimony and evidence presented to the jury.

We also find that the trial court erred, as conceded by the People, in allowing the prosecutor to introduce testimony that the defendant was in possession of currency other than the prerecorded money since the defendant was only charged with

a single sale of narcotics *(see, People v Escala,* 128 AD2d 546, 547; *see also, People v Valderama,* 161 AD2d 820, 821). Indeed, the prosecutor seized upon the prejudicial effect of this evidence during her cross-examination of the defendant, by asking him if he made a habit of carrying small denominations of bills so that he could make change in the park. The question was sustained as to form.

In addition, the trial court should have permitted the defendant to exhibit McClean to the jury in support of the defense of mistaken identity. Both men were similarly described by the undercover police officers, and while the men were allegedly involved in different transactions, they were identified in close proximity of time and location to each other, as well as Anderson, as the undercover police officers rode by and made their confirmatory identifications. Further, there was a proper foundation for the introduction of McClean as a physical exhibit through the testimony of a defense witness, who was familiar with McClean and who had witnessed both McClean and the defendant being put into the police vehicle after their arrests *(see, People v Shields,* 81 AD2d 870, 871; *People v Diaz,* 111 Misc 2d 1083; *cf., People v Jiminez,* 172 AD2d 364; *People v Malphurs,* 111 AD2d 266, 269-270).

In light of the foregoing, we need not address the defendant's remaining contentions. Kunzeman, J. P., Kooper, Lawrence and O'Brien, JJ., concur.