■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v SARAH SMITH, Respondent.—Order of the Supreme Court, Bronx County (John P. Collins, J.) entered June 28, 1991, which granted defendant's motion to vacate the jury verdict entered January 24, 1991, finding defendant guilty of murder in the second degree, and the order of the same court and Justice, entered July 2, 1991, denying the People's motion for reargument, unanimously reversed, on the law and facts, the grant of the motion vacated and the matter remanded for a full evidentiary hearing on the claimed juror misconduct.

Defendant Sarah Smith was found guilty of second degree murder for the shooting of her husband, Owen Smith, on May 23, 1989. Defendant presented a defense of "battered wife syndrome". The People's case consisted of defendant's confession and physical and expert evidence corroborating that confession.

Thereafter, the defendant moved pursuant to CPL 330.30 to set aside the verdict based, *inter alia,* on juror misconduct. An affidavit by one of the jurors, Estella N., stated that unnamed fellow jurors had mentioned a New York Times article about the case that had appeared on January 15, 1991, the second and last day of testimony on the People's case.

According to Ms. N., two unnamed jurors had spoken of the fact that defense counsel, Mr. Michael Dowd, had handled other cases involving battered women. One of these unnamed jurors had allegedly stated that Mr. Dowd was "involved in the Donald Manes case" and that he had "probably approached Ms. Smith to handle her case because * * * he had been successful in other battered women's cases". This juror also allegedly said that defendant should have pleaded guilty to manslaughter and not gambled with the case. Ms. N. stated

further that after the trial she had read the article and found that it "contained the same information about Mr. Dowd that the jurors were talking about right after the day the article appeared". At no place in the affidavit did Ms. N. state that any juror said the person had actually read the New York Times article or had explicitly attributed his/her remarks to the article. The defense counsel, in further support of the motion, stated that during the voir dire, each of the jurors had said he/she had never heard of him and that his background and relationship with Donald Manes had not been mentioned at trial.

Thereafter, counsel filed an attorney's affirmation, *in camera,* stating that Estella N. revealed that Angel M. and Doris L. were the jurors she had referred to. Angel M. allegedly was the juror who had mentioned defense counsel's involvement with Donald Manes and said Ms. Smith should have pleaded guilty. At no time in this attorney's averment of what Ms. N. had said, did counsel contend that Ms. N. had reported that any juror had said that he/she had read the article in the New York Times. Some two months later, counsel submitted another affirmation "under seal" reporting another conversation with Ms. N. where she said another juror, whom she refused to name, had informed Ms. N. that she was "going to get her friend Angel M. in trouble because he was the juror who read the *New York Times* article during the trial".

In their opposition, the People noted that neither the hearsay affidavit of Ms. N. nor the double hearsay averments of defense counsel stated or tended to prove that any juror read the New York Times article; that verdicts may not be impeached by statements of jurors alleging their own misconduct; that the comments by jurors Angel M. and Doris L. even assuming they were made, did not prove exposure to extra-record matter of a type that prejudiced the defendant; and that Angel M.'s alleged conclusion during deliberations that the victim was shot while asleep could readily have been based upon the strong evidence to that effect adduced during the trial.

In a reply memorandum, the defendant declared the People "do not deny the truth, of the defendant's factual allegations that, during Sarah Smith's trial, jurors were exposed to the contents" of the New York Times article, and further asserted that "[t]he People concede * * * that '[e]xtra-record information which comes to the attention of the jury is presumptively prejudicial' ".

At oral argument, the court queried whether the People by

failing to present any proof to the contrary, accepted the allegations that had been made by Ms. N. The prosecutor responded that she accepted the fact that statements had been made by Ms. N. but that "I don't accept that based on those statements we can assume that [Angel M.] read any article or that we can speculate as to the effect that reading any article might have had upon him or any other juror during deliberations".

The trial court, *sua sponte,* sent a letter to juror Angel M. requesting his presence for a hearing to be held June 7, 1991. While the parties appeared in court that day, the juror did not. The court issued an order for his production on June 14, 1991 for a hearing. Neither the People nor the defendant requested the production of any other juror or witness, although the defense had made the suggestion that jurors be called to a hearing in its reply memorandum and supplemental affirmation.

At the hearing, Angel M. asserted he would "plead the Fifth Amendment" as to questions concerning his jury service. When the court asked if the People would grant immunity to the witness, the People responded they were not prepared to grant immunity at that point, and suggested that if other jurors were spoken to, it would be possible to make an informed decision about immunity. The court refused to give the People an adjournment for additional time to call other jurors, including Ms. N.

After reserving decision, the court, in a written decision some two weeks later, granted the defendant's motion to set aside the verdict based upon juror misconduct. In its decision, the court noted that the article had four main points; that Sarah Smith had shot her sleeping husband in the head; that her attorney was Michael Dowd who successfully defended other battered wives; that this was Mr. Dowd's last case before beginning a five year suspension for making kickbacks on a city contract at the direction of Donald Manes; that the District Attorney had offered Ms. Smith a plea to manslaughter with a term of 4 to 12 years and if now convicted of the top counts she could face a minimum sentence of 15 years to life in prison. It stated that "[t]he District Attorney concedes that the article is presumptively prejudicial" and that "[h]aving been prevented from hearing [Mr. Angel M.], the court finds that the presumption has not been rebutted". It set aside the verdict and granted a new trial. Thereafter, the trial court denied the People's motion for reargument on the basis it had committed factual and legal errors.

When improper conduct by a juror occurs during a trial "which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (CPL 330.30 [2]), the court must grant a motion to set aside the verdict without a hearing if "(i) The moving papers allege a ground constituting legal basis for the motion; and (ii) Such papers contain sworn allegations of all facts essential to support such ground; and (iii) All the essential facts are conceded by the people to be true." (CPL 330.40 [2] [d].) On the other hand the court may deny the motion without a hearing if "(i) The moving papers do not allege any ground constituting legal basis for the motion; or (ii) The moving papers do not contain sworn allegations of all facts essential to support the motion." (CPL 330.40 [2] [e].)

In applying these rules to the instant matter, we find, contrary to the People's contention, that the moving papers *do* allege a ground constituting legal basis for the motion. This legal basis was the Times article allegedly read and related to other jurors by juror Angel M. If true, this could well render the verdict the product of an improper outside influence which "embraces not merely corrupt attempts to affect the jury process, but even well-intentioned jury conduct which tends to put the jury in possession of evidence not introduced at trial" *(People v Brown,* 48 NY2d 388, 393). While the People urge that to state a viable claim proof must be placed before the court or offered by defendant to show that the extra-record material actually impacted upon any juror's deliberations or that it caused prejudice, this proof is only necessary for a finding of jury misconduct. In asserting that a juror had been unduly influenced by an outside contact and in submitting the statements of Ms. N. and the supporting affirmations, the defendant met the first prong of both paragraphs (d) and (e) of CPL 330.40 (2).

With respect to clause (ii) of both paragraphs (d) and (e) of CPL 330.40 (2), contrary to the People's assertion, the defendant's motion contained sworn allegations of all the essential facts. While the People characterize Estella N.'s sworn allegations as "hearsay assertions" and "speculation", these sworn allegations sufficiently alleged "the occurrence or existence of all facts essential to support the motion" (CPL 330.40 [2] [a]). Juror Ms. N. swore as to what she allegedly observed and heard. While her affidavit and the affirmations of counsel were not sufficient, in themselves, to establish the fact that a juror or jurors *did* read or relate the New York Times article or that any juror had been impermissibly biased by such an

article (even assuming it had been discussed), a fair reading of the affidavit and the affirmations impels the conclusion that the defendant made sufficient allegations to comply with clause (ii).

Accordingly, pursuant to CPL 330.40 (2) (e), the court correctly did not deny the motion to set aside the verdict without a hearing, since the defendant met the two requirements of the section. However, the court would not have been justified in granting the motion without a hearing pursuant to CPL 330.40 (2) (d) since clause (iii) was not met, i.e., all of the essential facts were *not* conceded by the People to be true. Thus, in their answering papers, the People pointed out that the defendant presented no evidence that any juror had read the New York Times article; that no proof had been presented that any juror had been influenced by any extra-record information; and that there was no proof of prejudice, even assuming the remarks were made. The trial court was incorrect in its decision when it found that the allegations were "uncontested".

Further, the trial court improperly found, after the abortive preliminary hearing, that the article was "presumptively prejudical" and that the presumption of prejudice was not rebutted by the People. The verdict should not have been set aside without a showing as to what extra-record material came before the jury, if any, and its impact on the jury's opinions and ability to render a fair verdict. Thus, in *People v Testa* (61 NY2d 1008, 1009), the Court of Appeals held that a trial court did not abuse its discretion in denying a motion to set aside a verdict where the court "heard conflicting testimony as to what transpired during deliberations when the jurors discussed a news report that appellant's codefendant had pleaded guilty to the same charges on the eve of appellant's trial, and whether this information had a substantial impact on the eventual verdict." Likewise in *People v Genovese* (10 NY2d 478, 480), the Court of Appeals found that where jurors read two articles described as showing "callous disregard for fair trial requirements", the court, nevertheless, properly refused to disqualify six jurors who declared that they had not been influenced and could be fair.

Additionally, we find that while the court properly sought to question juror Angel M., its method of proceeding was faulty. In failing to grant the People an adjournment to permit the examination under oath of Ms. N., and, if necessary, other jurors, for an inquiry into the truth of the contested allegations and a determination whether such extra-record informa-

tion, if proven by the defendant, adversely and unduly influenced the jury, it abused its discretion. The court should have called Ms. N. as the first witness, since she had waived any right to confidentiality and, only if her allegations withstood examination, should other jurors, including Angel M. have been called. By expecting the People to immunize Angel M. at that early stage (the trial court noted in its decision that it had been "prevented from hearing" Mr. M.), and finding that the "presumption" of prejudice had not been rebutted thereby by the People, the court both erred in drawing an inference from the invocation of the Fifth Amendment privilege (see, People v Thomas, 51 NY2d 466, 472), and in misapplying the burden of proof. CPL 330.40 (2) (g) mandates that: "[u]pon such a hearing, the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion."

In view of the foregoing, therefore, we vacate the grant of defendant's motion to vacate the jury verdict, and remand the matter for a full evidentiary hearing on the claimed juror misconduct in accordance with this decision. Concur—Sullivan, J. P., Milonas, Rosenberger, Ross and Asch, JJ.