756 A.2d 1

**Virginia K. McCANN, Appellee,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellant.**

Supreme Court of Pennsylvania.

Argued May 1, 2000.

Decided July 19, 2000.

Roger H. Caffier, Chief Counsel, Dept. of Labor & Industry, Roger E. Grimaldi, Deputy Gen. Counsel, James M. Sheehan, Gen. Counsel, for UCBR.

Donald Marritz, Community Law Clinics, Carlisle, for Virginia K. McCann.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

This case concerns the propriety of an assessment of counsel fees against Appellant, the Unemployment Compensation

Board of Review (the "Board"), under Pennsylvania Rule of Appellate Procedure 2744.

Appellee, Virginia McCann ("McCann"), was employed by CR's Friendly Market ("Employer") until April 30, 1996, when she was discharged for allegedly looking through a co-employee's purse. McCann subsequently applied for unemployment compensation benefits, which were initially denied by the Job Center upon a finding of willful misconduct. At the ensuing hearing before the unemployment compensation referee, Employer's manager, Gregory Golden, testified that McCann had searched the purse of another employee, Katina Fisher, looking for a two-dollar bill that had previously been in the drawer of the cash register. Mr. Golden explained that, although he did not personally observe the incident, the circumstances of its occurrence were conveyed to him by Ms. Fisher and another employee, John Watts. Mr. Golden specifically stated that McCann was discharged for "looking through another employee's personal property without their permission." Employer also offered an unsworn statement signed by Mr. Watts explaining the incident. McCann, acting *pro se,* testified that she had tried to purchase the two-dollar bill from the cash register only to learn that it was missing. McCann denied having searched Ms. Fisher's purse, explaining that she had accidently observed the two-dollar bill in the side pocket of the purse while picking it up and showed the subject bill to her co-worker, Mr. Watts.

Following the hearing, the referee awarded benefits upon concluding that Employer offered no evidence of willful misconduct by McCann. On Employer's appeal, rejecting McCann's testimony as not credible, the Board found that McCann intentionally and purposefully looked into Ms. Fisher's purse, thus invading the privacy of a co-worker, without good cause. Concluding that McCann's conduct violated the standards of behavior that Employer could rightfully expect from its employees, the Board held that McCann engaged in willful misconduct disqualifying her from receiving unemployment compensation benefits.[1]

1. Section 402(e) of the Unemployment Compensation Law provides that:

McCann, by counsel, sought reconsideration of the Board's decision on the basis that all of Employer's evidence of willful misconduct consisted of uncorroborated hearsay statements and, thus, was insufficient to support the Board's adjudication.[2] The Board denied McCann's request, and an appeal to the Commonwealth Court followed. During the pendency of that appeal, counsel for McCann unsuccessfully sought agreement from the Board for a remand, again raising the hearsay nature of Employer's evidence, and arguing that such evidence could not be corroborated solely by the Board's disbelief of McCann's testimony. The Board maintained that its adjudication was sustainable on the ground that McCann engaged in willful misconduct, not only by looking into Ms. Fisher's purse, but also by showing the two-dollar bill to her co-worker.

Following submission of briefs, a three-judge panel of the Commonwealth Court held that Employer's proofs, comprised, as they were, of hearsay statements, did not provide the requisite substantial evidence necessary to support the finding that McCann had intentionally searched a co-employee's purse. Nor, the Commonwealth Court held, was Employer's evidence sufficiently corroborated by the Board's credibility determination concerning McCann's testimony. The Commonwealth Court then rejected the Board's alternative theory of affirmance, explaining that:

> The Board essentially agrees that there is no substantial evidence in the record to support a finding that Claimant intentionally searched a fellow employee's purse. Instead of agreeing with Claimant's arguments and withdrawing its

An employe shall be ineligible for compensation for any week—
* * *
(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .
Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

2. In the absence of an objection upon its admission, hearsay evidence may support an administrative tribunal's findings if it is corroborated by other competent evidence of record. *See Vann v. Unemployment Compensation Bd. of Review,* 508 Pa. 139, 150, 494 A.2d 1081, 1086 (1985).

opposition thereto, the Board contends that Claimant had nevertheless engaged in willful misconduct by showing the two dollar bill to her co-worker. However, Employer did not raise Claimant's showing the two dollar bill to a co-worker as a basis for her discharge, there was no work rule prohibiting such conduct on the part of Claimant, and the Board, in its decision, did not state that such conduct was the basis for its determination that Claimant had engaged in willful misconduct. As such, the Board is precluded from raising that issue as a grounds for discharge for the first time on appeal, and we refuse to consider the Board's argument on that issue.

Expressing displeasure with the Board's argument in this regard, the Commonwealth Court also stated:

In the past, when its decision was unsupported by the record, the Board indicated as such and withdrew its opposition to the claimant's appeal rather than proceed on the merits. Here, however, the Board raises a different reason for Claimant's discharge than it did in its decision, i.e., that Claimant had shown the two dollar bill to her co-worker, in a last ditch effort to justify its otherwise insupportable action.

Relying upon the Commonwealth Court's expressed dissatisfaction, as well as the Board's denial of the request for reconsideration and its refusal to agree to a remand, McCann's counsel filed a motion for attorney's fees under Pennsylvania Rule of Appellate Procedure 2744, claiming that the Board's position was frivolous.[3] Counsel sought $126.72 for costs in reproducing briefs and $1,635.00 in attorney's fees.

The majority of the Commonwealth Court, sitting *en banc*, held that counsel fees can be assessed under Rule 2744 against an administrative tribunal that subsequently defends its deci-

---

**3.** Pennsylvania Rule of Appellate Procedure 2744 permits an appellate court to award counsel fees and delay damages, in addition to other allowable costs:

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious.

Pa.R.A.P. 2744.

sion on appeal, explaining that such an award is predicated upon a showing that the Board's conduct as a party before the court was dilatory, obdurate or vexatious and does not impinge upon an administrative tribunal's adjudicatory functions. *See McCann v. Unemployment Compensation Bd. of Review*, 723 A.2d 246, 250 (Pa.Cmwlth.1999). The majority proceeded to examine the Board's conduct during the appellate process, concluding that the advancement of a different but unsupported theory for affirmance, made in the Board's capacity as an advocate, constituted vexatious and obdurate conduct warranting the imposition of counsel fees under Rule 2744. *See id.* at 251. In a dissenting opinion, Judge Smith, joined by Judge Doyle, explained that attorney's fees may only be awarded against a state agency if expressly authorized by statute. *See McCann*, 723 A.2d at 252 (Smith, J., dissenting). Judge Smith found no express statutory authority pertaining to adjudicative agencies, such as the Board, and reasoned that the majority's distinction between the Board's actions as a quasi-judicial entity and its conduct as a respondent on appeal was too subtle and would lead to applications for fees under Rule 2744 whenever a party disagreed with an agency decision or argument. *See id.* at 253. In a separate dissenting opinion, Judge Leadbetter agreed that an adjudicative tribunal can be subject to fees under Rule 2744 for conduct undertaken in defense of its decision during appellate review, but would have concluded that the Board's conduct in the present case was not obdurate, dilatory or vexatious. *See McCann*, 723 A.2d at 253 (Leadbetter, J., dissenting). Judge Leadbetter viewed the Board's advocacy, like that of any other party on appeal, as permissibly seeking affirmance on an alternative ground.

Presently, the Board argues that the imposition of attorney's fees under Rule 2744 encroaches upon its quasi-judicial immunity; penalizes its adjudicative functions; renders those functions subject to the threat of external pressures; and compels the Board to admit error in its decision-making process. The Board further contends that the award of attorney's fees violates the doctrine of sovereign immunity, as there exists no express statutory authorization for the assess-

ment of fees against an administrative agency defending its adjudication on appeal. McCann, on the other hand, following the reasoning of the majority opinion of the Commonwealth Court, explains that attorney's fees were not awarded against the Board for actions occurring in the adjudicatory process, but rather, for its conduct as an appellate litigant, thus negating any claim of quasi-judicial immunity. Regarding the Board's assertion of sovereign immunity, McCann posits that the Legislature's authorization of the underlying action against the Board for unemployment compensation benefits constituted a waiver of sovereign immunity, rendered the Board a party subject to an award of benefits, and sanctioned the imposition of counsel fees under Rule 2744 as an exercise of judicial authority.

■ Resolution of these competing arguments would necessarily implicate questions touching upon the respective roles and interests of coordinate but constitutionally separate branches of government. Quasi-judicial agencies should be afforded the ability to perform their administrative and adjudicative functions as part of the executive branch of government free from excessive interference by the judiciary. At the same time, however, courts possess an inherent authority to guard the integrity of judicial proceedings by sanctioning egregious conduct of litigants. In determining whether and under what circumstances this latter power can be invoked to impose sanctions against the Commonwealth and its agencies, courts must be particularly circumspect, as, in our systems of checks and balances, this is one area in which the judiciary by necessity must render the final pronouncement.[4]

■ Here, however, we need not reach this issue, since we conclude that the Board's conduct during the appellate process was not dilatory, obdurate and vexatious within the meaning

4. *See generally State of Mississippi v. Blenden,* 748 So.2d 77, 88–89 (Miss.1999) (discussing sovereign immunity in relation to courts' inherent authority to sanction under the separation of powers doctrine); *United States v. Horn,* 29 F.3d 754, 767 (1 st Cir.1994) ("the doctrines of sovereign immunity and supervisory power, each formidable in its own right, are in unavoidable tension").

of Appellate Rule 2744.[5] The Commonwealth Court's contrary statement notwithstanding, the Board never conceded that its decision was unsupported by substantial evidence, nor were the Board's findings based entirely upon uncorroborated hearsay testimony. The undisputed facts, arising primarily from McCann's own statements, establish that McCann did look in her co-worker's purse; the only controverted issue centered upon whether she did so accidentally or intentionally. Although Employer offered no direct evidence of McCann's intent, such direct proof of an actor's state of mind, often being impossible to obtain, is frequently inferred from the circumstances surrounding the actor's conduct. The circumstantial evidence associated with the incident at issue, including McCann's frustrated desire to purchase the missing two-dollar bill, suggests a course of conduct that provides arguable support for the Board's inference that McCann deliberately looked into the purse. Furthermore, although the Board's alternative argument for affirmance, namely, that McCann knowingly conveyed private information in pursuit of a personal economic interest, was contrary to the Commonwealth Court's precedent because it was not a reason for discharge specifically raised by Employer, the Board could, quite properly, have argued that McCann's admitted showing of the contents of her co-worker's purse to another employee constituted some corroborating circumstantial evidence that McCann's actions were not inadvertent. Viewed in this light, the Board's formulation of its arguments, although ultimately unavailing, was not so egregious as to warrant the imposition of monetary sanctions.

Accordingly, the order of the Commonwealth Court assessing attorney's fees against the Board under Rule 2744 is reversed.

5. *See, e.g., Commonwealth v. Pittman,* 515 Pa. 272, 276, 528 A.2d 138, 141 (1987) (declining to resolve constitutional issue where alternative disposition exists); *see also Spallone v. United States,* 493 U.S. 265, 274, 110 S.Ct. 625, 631, 107 L.Ed.2d 644 (1990) (declining to consider constitutional and legislative immunity challenge to a court's contempt order where the order arose from "an abuse of discretion under traditional equitable principles"); *Armstrong v. Executive Office,* 1 F.3d 1274, 1290 n. 13 (D.C.Cir.1993) (same).