Nos. 13-1264 & 13-0962 - <u>State of West Virginia v. Daniel L. Herbert</u>

**FILED**

**November 25, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring, in part, and dissenting, in part:

The majority creates new law for West Virginia, but without support from any other jurisdiction in the entire country. Overturning recent precedent, the majority holds that in criminal trials, trial courts "shall require" a non-party witness to invoke the privilege against self-incrimination "in the presence of the jury." This new rule of law is fraught with problems, including the potential for manipulation by allowing either the prosecution or the defendant to call a witness solely to allow the jury to draw adverse inferences from a witness's refusal to testify. The majority's decision will undoubtedly leave the trial courts of this state scratching their heads, wondering precisely to what extent they must "cattle prod" a witness into invoking the Fifth Amendment privilege in the jury's presence. And, because the privilege was never actually asserted by anyone in this case, there is no factual predicate for this Court to make any rulings regarding the Fifth Amendment. While I concur in the decision to affirm the defendant's convictions based on the overwhelming evidence of his guilt,[1] I dissent to the extent the majority creates an unsound new point of law

---

[1]The defendant's self-defense argument was destined for failure in light of the fact that he shot the victim multiple times in the back as the victim was running away from the defendant. Additional evidence that demonstrated the impossibility of self-defense was the introduction by the State of nine eyewitnesses, each of whom positively identified the
(continued...)

1

regarding the Fifth Amendment privilege and unnecessarily overrules recent precedent in the process.

## I.  Lack of Factual Basis for New Law

During the State's case-in-chief, the prosecutor called one of the victims of the defendant's crimes, Gabriel McGuire, to the witness stand.  Having been advised that securing Mr. McGuire's trial testimony would likely be problematic, the following exchange took place:

> Prosecutor: I think we should make the effort to bring him [McGuire] in . . . .
>
> Court: What, I'm going to have him . . . drag him here?
>
> Defense counsel: Yes.
>
> Prosecutor: I think that's because the problem, if he refuses to come, behave himself, which certainly the Court needs to inform the jury that we tried to get him in here, but he wouldn't come in.
>
> Defense counsel: Maybe we should excuse the jury, bring him in here, find out if he's going to take the Fifth.
>
> • • • •
>
> Prosecutor: I ask that the jury be excused and bring in Mr. McGuire . . . . but the fact of him being drug in here by the officers and then drug in here screaming, that is not . . . that

---

[1](...continued)
defendant at trial as the shooter.

shouldn't be done in front of the jury. . . . what matters is what he says on the stand . . . .

• • • •

Defense counsel: As far as the jury, they have a victim. The jury is entitled to see that.

The Court: It is a different thing once he's in there, and if he refuses to testify I think that's a different thing than dragging him in here.

• • • •

Defense counsel: Well, they [the jury] will not be able to see it. That's relevant to my client . . . .

The Court: . . . . Why drag in a person?

• • • •

The Court: No . . . I'm not going to do it in front of the jury.

The trial court excused the jury from the courtroom after which the following was placed into

the trial record:

> Defense Counsel: . . .  I would like the record to reflect that I think it's strongly prejudicial to my client that the jury had to be excused because the State didn't want them [the jury] to see [Mr.] [] McGuire brought into the courtroom, and how, you know, as the trier of fact they get to examine everyone's demeanor, which includes the way they [witnesses] walk; how they're presented; their defiance to the Court; their defiance to the prosecutor; their defiance to the defense attorney.  All that's relevant.  We're talking about a self-defense case here, and we can't even get in the daggone victim.  How is that not relevant to my client?  And the . . . character of the victim[?]

Prosecutor: . . . I think this is a court security issue. We do not need a fight in front of the jury, and what takes place until the witness gets on the witness stand is not evidence. What happens on the witness stand is evidence . . . . but I think we've got a major court security issue here. We do not want any fighting. We don't want a mistrial. . . . This is a matter of whether we can physically put the body on the stand, and we might not be able to, Judge.

The Court: Well, and just for the record, I've been informed by the chief bailiff that it's a security issue.

Thereafter, the record reflects that, as predicted, the courtroom bailiffs had to physically strong-arm a recalcitrant Mr. McGuire into the courtroom:

Mr. McGuire: Get off me, man. How can you (inaudible) in the f**king courtroom, man? I don't care. I'm not coming in here, man.

The Court: Okay. You need to bring him over here to be sworn in. Right here. Okay. Right there. Now, I'm going to bring in the jury.

Prosecutor: Judge, I object. . . . This is not evidence. He physically should not be in the courtroom with the jury. I think this is a court security issue, and I would say hold him in contempt and get him out of here. I do not want to see the officers tackle him in front of the jury. That's not evidence.

Court Reporter: Mr. McGuire, is your last name spelled M-C-G-U-I-R-E?

Mr. McGuire: (No response.)

• • • •

The Court: Sir, are you willing to take the stand?

Mr. McGuire: No, I'm not.

4

Upon confirmation of his refusal to testify, the trial court held Mr. McGuire in contempt of court and ordered that he be retained in the regional jail so that the defendant could call him as a witness in his case-in-chief the following day. The trial court warned Mr. McGuire that if he again refused to testify or cooperate, he could be subject to additional contempt proceedings. Mr. McGuire promptly suggested that the trial court "might as well do that now, because I ain't coming out here and testifying, period." Disinclined to accept Mr. McGuire's suggestion, the trial court directed that he be removed from the courtroom, after which the following was placed in the trial record:

> Prosecutor: Your Honor, may the record reflect that the witness, Gabriel McGuire, refused to take the stand, not even to testify, and physically resisted the officers in the Court's presence . . . and had to be held by two officers for the safety of all persons in this courtroom?
>
> The Court: And I just want to say for the record that I was informed by the chief bailiff that he appears to be a danger to the jurors if he's forced to take the stand. . . .
>
> • • • •
>
> Defense counsel: As someone who's aggressive. A man who won't even take the stand under threat of being held in jail, and physically . . . we saw him hit his head against the wall over here; physically resisted coming in here, and was aggressive with the bailiffs. I think his character is definitely a pertinent trait as this point.
>
> The Court: It's not a question of whether his character is a pertinent trait, but it's a question of whether self-defense has been.
>
> • • • •

5

> Prosecutor: Judge, it's not a pertinent trait until the defense shows that this was self-defense, and just because a person has a bad history and just because they're physically resistant to testifying . . . is not sufficient evidence for self-defense. The defense has not raised any evidence that this is a self-defense case yet . . . .

The trial court then made the following findings with regard to having held Mr. McGuire in contempt of court:

> The Court: . . . [F]or the record . . . there was an attempt to bring him [McGuire] in here. He made it very clear that he would not cooperate; that he would refuse to testify, and wouldn't even take the oath; and there were two bailiffs that had to restrain him when he was in the courtroom. Several other bailiffs who were standing around, and I noticed it appeared, based on his behavior and his demeanor, that he would actually pose a danger to the jurors, and a court security issue if he were to get here. I was notified there would be a fight in front of the jury.
>
> Defense counsel: And, Your Honor, he didn't . . . he just refused to cooperate. He didn't plead the Fifth.
>
> The Court: No, he did not plead the Fifth.

It is clear from this exchange that defense counsel recognized that Mr. McGuire was not invoking the Fifth Amendment privilege; rather, he "just refused to cooperate." Upon their return to the courtroom, the trial court advised the panel that Mr. McGuire had been subpoenaed to testify; that he refused to take the oath or to testify; that the court did not feel that he could be physically forced to take the oath or to testify; and that the court was holding him in contempt.

6

Later, when counsel and the trial court discussed the anticipated appearance of Mr. McGuire the next day for the defendant's case in chief, the following exchange occurred:

> Prosecutor:   . . . [W]hen he calls Mr. McGuire as a witness . . . either we do this outside of the presence of the jury . . . I think it is unjust to have a police officer holding him, gagging him, on the stand him fighting, and it's just not proper.  The guy can take the Fifth . . . .  but you're not supposed to call a witness to the stand if that witness is going to take the Fifth.
>
> The Court: Based on what I saw, I don't think we would ever get to that point . . .
>
> Prosecutor:   Right, and I don't think we're going to get to that point either.

Again, the trial court recognized that Mr. McGuire would never reach the point of invoking the privilege if he continued in his refusal to take the witness stand and be sworn.

The following morning, and over defense counsel's objection, the trial court excused the jury before efforts were made to escort Mr. McGuire to the witness stand—this time as a witness for the defense.  After Mr. McGuire was brought into the courtroom, the following transpired:

> The Court: Are you prepared to testify today?
>
> Mr. McGuire: I plead the Fifth.
>
>   • • • •
>
> Defense counsel:  He don't [sic] have the Fifth.

7

Notwithstanding defense counsel's protestation that Mr. McGuire did not have a Fifth Amendment privilege, the trial court granted immunity to Mr. McGuire in its continuing effort to secure his testimony for the defense. The effort was unsuccessful because Mr. McGuire continued in his refusal to take the witness stand:

> Mr. McGuire: . . . I have no intentions of testifying. I am not taking the stand and I am not testifying.
>
> The Court: Are you saying that you refuse to take the stand?
>
> Mr. McGuire: That's what I'm saying, I refuse to take the stand and I refuse to testify.
>
> The Court: Are you saying - - so you are no longer taking the Fifth. You're saying you refuse - -
>
> Mr. McGuire: I refuse to talk, period, that's what I'm saying, I refuse to talk. I refuse to take the stand and I refuse to testify.
>
> The Court: Would you raise your right [hand] to be sworn in?
>
> Mr. McGuire: No, I am not.[2]

_____

[2]The defendant may have benefitted from Mr. McGuire's refusal to take the witness stand because he averted Mr. McGuire's likely denial of having a knife or threatening the defendant in any manner. In addition, the trial court repeatedly informed the jury of Mr. McGuire's contumacious behavior when efforts were made to have him take the witness stand:

> While the jury was out, Mr. McGuire was brought into the courtroom in custody. He was physically restrained. Both sides sought to call him as a witness . . . they both have a right to compel witnesses to come before the Court.
>
> As with yesterday, Mr. McGuire refused to take the oath

(continued...)

8

The foregoing colloquy indisputably demonstrates that the issue in this appeal was not the Fifth Amendment. Significantly, following the trial court's award of immunity to Mr. McGuire in its effort to secure his testimony, Mr. McGuire merely took up the recalcitrant mantra he had voiced the day before when called as a witness by the prosecution: "I refuse to take the witness stand; I refuse to take the oath; and I refuse to testify in any manner." Mr. McGuire did not dispute the trial court's statement "so you are no longer taking the Fifth." In short, there is simply no factual basis for the majority to adopt a new rule of law regarding a non-party's witness's invocation of the Fifth Amendment privilege. This is absolutely not a Fifth Amendment case.

---

[2](...continued)

> and said he would refuse to testify. He does not have grounds to refuse to take the stand and he does not have grounds to refuse to take the oath. However, my powers are limited to holding him in contempt until he testifies and because . . . he is here for purposes of testimony only from federal custody, I don't have much force or influence in terms of doing that . . . .
>
> The bailiffs have determined yesterday that it was a Court security issue in bringing him here in the presence of the jury and that it would be a safety issue for those involved.

The record further reflects that during closing arguments, defense counsel was allowed to describe Mr. McGuire's behavior as bailiffs endeavored to get him to the witness stand, including the fact that he beat his own head against the wall; to argue that Mr. McGuire is a man known for violence; to allege that Mr. McGuire is a "belligerent gang member;" to suggest that Mr. McGuire's refusal to testify was a sign that he was the aggressor; and to reference a rumor that Mr. McGuire had beaten a murder charge on a prior occasion.

## II. Fifth Amendment Privilege

Despite the clear dearth of factual support in the record for its new rule of law, the majority holds in syllabus point two that "[i]n a criminal trial, when a non-party witness intends to invoke the constitutional privilege against self-incrimination, the trial court shall require the witness to invoke the privilege in the presence of the jury[,]" and "[t]o the extent *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), is inconsistent with this holding, it is hereby modified."[3] While I am not adverse to adopting a new point of law where warranted, I perfer to act in accordance with Justice Ketchum's recent observation: "'An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law.'" *Sostaric v. Marshall*, __ S.E.2d __, 2014 WL 6461700 (W.Va. Nov. 12, 2014) (quoting Syl. Pt. 2, *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974)). Although I concurred in the new law adopted in *Sostaric*, I cannot do so in the case

---

[3]Although the majority touts the benefits of its new rule of law for criminal defendants, depending upon whether a witness is particularly important, I cannot discern how requiring the jury to observe the efforts to get Mr. McGuire into the courtroom and onto the witness stand would have bolstered the defendant's self-defense claim where he shot Mr. McGuire multiple times in his back as he ran from the defendant. Indeed, the jury's witnessing the drama of Mr. McGuire being dragged into the courtroom as he spewed expletives would beg for a mistrial, rather than constitute admissible evidence.

10

*sub judice* given the undeniable absence of any "changing condition[] or serious judicial error" in *Whitt*.[4]  *Id.*

While the majority recognizes the "majority approach" to the issue, it ignores that approach and creates a new point of law without any sound legal reasoning.  Under the established "majority approach", a party may not compel a non-party witness to take the witness stand solely for the purpose of having that witness assert his or her Fifth Amendment privilege in front of a jury.  In dismissive fashion, however, the majority states that this "majority approach" is "largely comprised of cases from the federal courts."  The majority's analysis is seriously flawed as state courts throughout the country follow the "majority approach."[5]  *See People v. Fletcher*, 566 P.2d 345, 347 (Colo. 1977) (stating that neither defendant nor prosecution may call witness to testify before jury to claim privilege against self-incrimination); *State v. Eichstedt*, 567 A.2d 1237, 1240 (Conn. App. Ct. 1989) (finding no error where trial court would not allow defense witness to be placed on stand merely to have witness exercise privilege against self-incrimination); *Martin v. United States*, 756 A.2d

---

[4]The Fifth Amendment issue is not the only instance where the majority creates new law without a sufficient factual predicate.  New syllabus points six and seven address penalty enhancing status element offenses, even though the defendant was not charged with such an offense.  The majority failed to recognize that his status as a felon was a necessary element of the crime with which he was charged.

[5]Contrary to the majority's suggestion that state courts follow the "majority approach" with "very little analysis," those courts have articulated sound reasoning for following the majority approach, which was recognized in *Whitt*, 220 W.Va. 685, 649 S.E.2d 258.

901, 904 (D.C. 2000) ("The law is clear that if a witness has declared unequivocally that he will not testify on the basis of the Fifth Amendment privilege against self-incrimination, the witness should not be placed on the stand and required to make that claim in front of the jury."); *Apfel v. State,* 429 So.2d 85, 86-87 (Fla. Dist. Ct. App. 1983) (recognizing trial court erred by permitting witness to testify in jury's presence solely for purpose of invoking Fifth Amendment); *State v. Lashley*, 664 P.2d 1358, 1365 (Kan. 1983) (recognizing that witness should not be called for sole purpose of allowing the jury to observe witness's claim of privilege against self-incrimination); *Dumas v. Com.*, No. 2010-SC-000378-MR, 2011 WL 2112560 , *7 (Ky. May 19, 2011) (citing *Clayton v. Com.*, 786 S.W.2d 866, 868 (Ky. 1990)) (recognizing that neither party can call witness who will refuse to testify on Fifth Amendment grounds); *State v. Gerard*, 685 So.2d 253, 259 (La. Ct. App. 1996) ("Once the trial judge determined that the witness would refuse to answer any questions about the murder . . . it was proper for her not to allow the witness to be called before the jury."); *Com. v. Gagnon*, 557 N.E.2d 728, 736 (Mass. 1990) (finding trial judge has no discretion to permit witness to appear before jury solely for purpose of invoking privilege against self-incrimination); *People v. Crisp*, No. 224307, 2002 WL 737784 (Mich. Ct. App. Apr. 23, 2002) (citing *People v. Dyer*, 390 N.W.2d 645 (Mich. 1986)) (holding that neither defense nor prosecution could call witness solely to have him assert his Fifth Amendment privilege in front of jury); *State v. Nunez*, 506 A.2d 1295, 1298 (N.J. Super. Ct. App. Div. 1986) ("[I]t is clear that a defendant cannot call a witness solely for the purpose of having him assert his

12

Fifth Amendment rights before the jury."); *State v. Whiteside*, No. 08AP-602, 2009 WL 1099435, *13 (Ohio Ct. App. Apr. 23, 2009) (upholding conviction and finding "there is no 'right' of defendant to call a witness solely for the purpose of invoking his or her Fifth Amendment rights in front of the jury")(citation omitted); *State v. Barone*, 986 P.2d 5, 20 (Or. 1999) (recognizing that prosecution may not put accomplice on witness stand solely for purpose of having accomplice invoke Fifth Amendment privilege in front of jury unless accomplice no longer possessed valid Fifth Amendment privilege against self-incrimination); *Com. v. Pritchard*, 411 A.2d 810, 814 (Pa. Super. Ct. 1979) ("[D]efense counsel was precluded from asking a witness a question knowing that the witness would invoke the Fifth Amendment's privilege against self-incrimination.") (citation omitted); *Brown v. State*, No. 13-04-00125-CR, 2005 WL 1995326 (Tex. App. Aug. 18, 2005) ("[A] defendant has no right to have a witness merely assert his privilege against self-incrimination in front of the jury.") (quoting *Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986)).[6]

---

[6]As the majority correctly observes, many federal courts also follow the general prohibitory rule. *See, e.g., U.S. v. Santiago,* 566 F.3d 65, 70 (1st Cir. 2009) (quoting *United States v. Rivas-Macias*, 537 F.3d 1271, 1275 n.3 (10th Cir. 2008)) ("Because a jury may not draw any legitimate inferences from a witness' decision to exercise his Fifth Amendment privilege, we have repeatedly held that neither the prosecution nor the defense may call a witness to the stand simply to compel him to invoke the privilege against self-incrimination."); *United States v. King,* 461 F.2d 53, 57, and n.4 (8th Cir. 1972) (ruling that decision to call witness to invoke Fifth Amendment privilege where no useful purpose would be served was error notwithstanding that curative instruction was given); *United States v. Gutierrez*, 122 F.3d 1075 (9th Cir. 1997) (Table) (finding defendant had no right to call witness for sole purpose of compelling witness to invoke the Fifth Amendment privilege before the jury) (citing *United States v. Licavoli*, 604 F.2d 613, 624 (9th Cir. 1979))

(continued...)

13

We recently acknowledged this accepted practice in *Whitt*, 220 W.Va. 685, 649

S.E.2d 258, stating that an exception to the "*general rule against allowing a witness to take*

*the stand solely for the purpose of exercising his or her Fifth Amendment privilege against*

*self-incrimination*" may be warranted in particular cases. *Id.* at 696, 649 S.E.2d at 269

(emphasis added). Shunning both the general rule and the Court's recent recognition of it

in *Whitt,* the majority chooses to rely upon *In re Anthony Ray Mc.*, 200 W.Va. 312, 489

S.E.2d 289 (1997). *Anthony Ray* involved a non-party witness's invocation of the privilege

against self-incrimination in the context of a "Rule 804(b)(3) against penal interest

unavailability issue." *Id.* at 324, 489 S.E.2d at 301. Because the Fifth Amendment privilege

was being analyzed within the context of an exception to the hearsay evidentiary rule, rather

than whether constitutional compulsory process requires a non-party witness to assert the

Fifth Amendment privilege in the jury's presence, *Anthony Ray* fails to support the majority's

new rule of law. *See Washington v. Texas*, 388 U.S. 14, 23 n.21 (1967) (finding defendant

---

[6](...continued)
("[B]ecause the trial court determined that [witnesses] would refuse to testify if called, the court correctly ruled that [defendant] could not call them as witnesses for the sole purpose of compelling them to invoke their Fifth Amendment privilege in front of the jury."); *United States v. Kamahele*, 748 F.3d 984, 1018 (10th Cir. 2014) ("A prosecutor cannot call witnesses solely for them to invoke the Fifth Amendment privilege against self-incrimination."); *United States v. Crawford*, 707 F.2d 447, 449 (10th Cir. 1983) (recognizing that neither prosecution nor defense may call witness knowing that witness will assert his Fifth Amendment privilege against self incrimination); *see also* 81 Am. Jur. 2d Witnesses § 121 (2004) ("[T]he court ordinarily should not permit a witness to testify on direct if the court has adequate reason to believe that the witness validly will invoke Fifth Amendment privilege on cross-examination with regard to matters which are bound up with those discussed on direct.").

14

was denied right to compulsory process for obtaining witnesses in his favor where testimony of defense witness was denied because state statute made witness's testimony inadmissible but also explaining that "[n]othing in this opinion should be construed as disapproving testimonial privileges . . . which are based on entirely different considerations from those underlying the common-law disqualifications for interest").

The majority also relies upon *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980), which equally fails to lend support for the majority's ruling. Upon a close reading, *Harman* does not even address the issue of whether a non-party witness can be compelled to the witness stand solely to invoke the Fifth Amendment privilege against self-incrimination. At issue in *Harman* was a trial court's refusal to bring an incarcerated accomplice to the defendant's trial because the accomplice's counsel would not give his permission to do so. The focus in *Harman* was solely on whether a witness could avoid being brought to the courtroom by invoking the Fifth Amendment privilege against self-incrimination. It did not address whether a non-party witness can be compelled to invoke the Fifth Amendment privilege in the jury's presence. In the case at bar, there is no indication that Mr. McGuire invoked the Fifth Amendment to avoid being physically brought to the situs of the defendant's trial. In fact, he was transported to the courtroom from an out-of-state federal prison for the express purpose of the defendant's trial.

The majority further cites *Harman* for the proposition that "a witness may not refuse to take the stand," yet this is precisely what Mr. McGuire did. In ruling that the Fifth Amendment privilege may only be invoked after a potentially incriminating question has been asked of the witness, the majority again cites *Harman* as support.[7] However, Mr. McGuire's refusal either to be sworn or to testify made it impossible to reach an incriminating question. In short, *Harman* is wholly inapposite to the situation faced by the trial court in the case *sub judice*.[8]

I find persuasive that in *Whitt*, this Court observed that neither *Anthony Ray* nor *Harman* answered the question presented: whether a witness who was granted immunity by the trial court and acquitted of the murder for which the defendant was on trial had a Fifth

---

[7]Although the majority also holds in syllabus point two that a non-party witness cannot invoke the privilege against self-incrimination until being asked an incriminating question, and suggests in its discussion that this new rule of law will somehow make it impossible for an uncooperative witness to defy a trial court's authority, I fail to see how the majority's holding would have in any way aided the trial court in the case at bar. Clearly, this new point of law will not facilitate or secure the testimony of a witness, such as Mr. McGuire, who simply refuses to be sworn or to testify in any manner. Further, those situations where a witness intends to invoke the privilege upon being sworn are covered by the general rule against calling an individual to the witness stand solely for that purpose. As for situations where a witness answers certain questions, but pleads the Fifth Amendment to others, those witnesses are obviously already sworn and before the jury, negating any need for the compulsion the majority mandates.

[8]The only other case cited by the majority in support of its new law is *North River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484 (4th Cir. 1987), a civil case addressing a defendant's assertion of the Fifth Amendment privilege against self-incrimination in relation to his filing of a responsive pleading in the action. *Stefanou* has absolutely no persuasive value to the case *sub judice*.

16

Amendment privilege against self-incrimination with respect to the murder. In the face of the general rule that a witness is not to be placed on the witness stand solely to invoke the Fifth Amendment privilege, we recognized a narrow exception that under certain circumstances, a defendant's constitutional compulsory process rights may warrant an exception to that general rule where the defendant offers a "proffer regarding the events to which the witness might testify along with a demonstration of the relevance of such testimony . . . to meet the requisite showing that the testimony would have been *both material and favorable to the defense*[.]" *Whitt*, 220 W.Va. at 687, 649 S.E.2d at 260, syl. pt. 4, in part (emphasis added). Here, the majority fails to address the fact that no such evidentiary proffer was made by the defendant. Although Mr. McGuire's testimony would likely have been material, I find it difficult to fathom how it could have been favorable to the defendant's claim of self-defense, particularly where the defendant shot Mr. McGuire multiple times in the back as he was running away from the defendant. *See State v. White*, 231 W.Va. 270, 744 S.E.2d 668 (2013) (concluding that evidence of defendant running after victim and shooting him was sufficient for jury to find that defendant was not acting in self-defense).

In those instances where jurisdictions have deviated from the general prohibitory rule, the determination of whether a witness should be called before a jury for purposes of invoking his or her Fifth Amendment privilege is left to the sound discretion of trial courts based upon the particular facts and circumstances of the case. *See United States*

17

*v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973) ("If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand."); *United States v. Dey*, 409 Fed.Appx. 372, 2010 WL 3749101, *2 (2d Cir. 2010) (citing *United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir.1993)) ("A 'district court has the discretion to prevent a party from calling a witness solely to have him . . . invoke the privilege against self-incrimination in front of the jury.'"); *United States v. Griffin*, 66 F.3d 68, 70 n.6 (5th Cir. 1995) (citing cases holding that while Sixth Amendment does not require court to place witness on stand merely to invoke privilege, court has discretion to do so); *United States v. Kinchen*, 729 F.3d 466, 475 (5th Cir. 2013) (holding that district court had discretion to prevent defendant from making witness invoke Fifth Amendment in jury's presence); *United States v. Tush*, 165 F. App'x 742, 744 (11th Cir. 2006) (finding no abuse of discretion in district court's refusal to allow defendant to call to stand witness who intended to assert Fifth Amendment privilege to all questions); *People v. Human*, 773 N.E.2d 4, 13 (Ill. App. Ct. 2002) (examining whether it was proper for trial court to preclude witness from taking stand for purpose of exercising his fifth amendment privilege against self-incrimination where witness had advised trial court, outside of the presence of jury, that he would claim his fifth amendment privilege if he was called to testify, and explaining that evidentiary rulings are within discretion of trial court); *State v. Gray,* 796 A.2d 697, 714-15 (Md. 2002) (recognizing trial courts have discretion to allow witness to invoke privilege against self-incrimination in front of jury); *People v. Thomas*, 415 N.E.2d

18

931, 934 (N.Y. 1980) ("[T]he decision whether to permit defense counsel to call a particular witness solely 'to put him to his claim of privilege against self incrimination in the presence of the jury' rests within the sound discretion of the trial court[.]"); *State v. Pickens*, 488 S.E.2d 162, 168-69 (N.C. 1997) (finding no abuse of discretion when trial court did not require witness to assert Fifth Amendment in jury's presence).

Had the majority undertaken this more reasoned approach and imbued our trial courts with the discretion to determine whether a witness should be compelled to invoke the privilege against self-incrimination in front of the jury based on the particular facts and circumstances of a given case, I might have been persuaded to agree with such a departure from the general rule and to such an extension of *Whitt*. I cannot, however, agree with the majority's mandate that compels trial courts, without exception, to force non-party witnesses to the witness stand for purposes of invoking the privilege in the jury's presence, particularly given the sound policy reasons undergirding the rule against such a requirement. Several of these laudable policy reasons were identified in *Whitt*:

> Those courts that require the assertion of the privilege outside the jury's presence adhere to this practice as a means of preventing the jury from drawing any improper inferences from the witness' decision to exercise his constitutional privilege. *See Bowles v. U.S.*, 439 F.2d 536, 541 (C.A.D.C. 1970) (recognizing concerns that invocation of Fifth Amendment in jury's presence "will have a disproportionate impact on their deliberations" and identifying principle that guilt may not be inferred from exercise of privilege as underpinning of rule that jury should not draw inferences from witness' decision to

19

exercise constitutional privilege against self-incrimination); *U.S. v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973) (stating that "[n]either side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him").

*Whitt*, 220 W.Va. at 696, 649 S.E.2d at 269.

Through its creation of a blanket requirement compelling a non-party witness to take the witness stand for the purpose of invoking his or her Fifth Amendment privilege in the jury's presence, the majority has unwisely forgotten the very principles that support the general prohibitory rule. In addition to the potential for the jury to draw a negative inference from a witness's decision to invoke the privilege as discussed in *Whitt*, there is also the potential for the jury to assign some probative value to the refusal to testify, or to speculate about a witness's unwillingness to testify. As the Kansas Supreme Court recently explained,

> a witness's reliance on the Fifth Amendment "may have a disproportionate impact upon the minds of the jurors." [Citation omitted.] "The jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the . . . fact that *it is a form of evidence not subject to cross-examination*." [Citation omitted.] Because *the impact of a witness's refusal to testify outweighs its probative value*, "[i]t is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." (Emphasis added.) 232 Kan. at

20

260, 654 P.2d 417 (quoting *Com. v. Hesketh*, 386 Mass. 153, 157, 434 N.E.2d 1238 [1982] ).

*State v. Turner*, 333 P.3d 155, 167 (Kan. 2014) (quoting *State v. Crumm*, 654 P.2d 417, 422 (Kan. 1982)). Similar concerns were voiced by the Appeals Court of Massachusetts:

> Requiring a Commonwealth's witness to assert the privilege in front of the jury could result in severe prejudice to the Commonwealth's case. See *Commonwealth v. Gagnon*, 408 Mass. 185, 198, 557 N.E.2d 728 (1990), *S.C.*, 430 Mass. 348, 718 N.E.2d 1254 (1999) (evidence that witness exercises his Fifth Amendment right "produce[s] no relevant evidence, while inviting the jury to engage in unwarranted and impermissible speculation"); *Commonwealth v. Oliveira*, 74 Mass. App. Ct. 49, 57-58, 904 N.E.2d 442 (2009) (permitting witness who refuses to testify to assert Fifth Amendment privilege before jury "presents the real possibility that jurors will speculate that the witness is guilty of the crime charged [or another crime] and that the defendant is not").

*Com. v. Viust*, 995 N.E.2d 1133, 1137 (Mass. App. Ct. 2013); *see also U.S. v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008) (internal citations omitted) (addressing alleged error where district court was aware that defense witness intended to invoke privilege against self-incrimination and concluding that "the district court's evidentiary ruling was not an abuse of discretion. The district court found that placing [witness] on the stand solely to invoke his Fifth Amendment privilege would lead to 'unfair prejudice' in the form of both unwarranted speculation by the jury and the government's inability to cross-examine [witness]. And any inferences that the jury might have drawn from [witness's] privilege assertion would have been only minimally probative–and likely improper–in any event.").

21

Through its express foreclosure of any discretion to trial courts, the majority grants prosecutors and defense counsel carte blanche to badger witnesses by repeatedly asking questions designed to elicit the invocation of the Fifth Amendment privilege. Neither the defense nor the prosecution should have the right to benefit from any inferences the jury may draw simply from observing a witness assert a valid Fifth Amendment privilege, yet that opportunity has clearly been created by the majority's decision. In an effort to alleviate some small measure of the potential harm created by its new point of law, the majority further holds that "where a non-party witness invokes the constitutional privilege against self-incrimination or otherwise refuses to testify, a party is not entitled to an instruction allowing the jury to infer that the witness's testimony would be favorable or unfavorable to either the defendant or the prosecution."[9] Critically, there is nothing in that new point of law that will prevent a jury's natural tendency to unilaterally draw its own inferences, whether favorable or unfavorable to either the defense or the prosecution, after observing a witness's invocation of the Fifth Amendment privilege.

Endeavoring to undervalue the valid concerns that support the general prohibitory rule, including the risk of creating "courtroom drama" through a witness's

_____

[9]I concur in this new syllabus point to the extent it will not allow such a jury instruction, but I disagree to the extent the majority further holds in syllabus point three that it is overruling *Whitt* to the extent it is inconsistent. Has the majority read *Whitt*? Nowhere in *Whitt* did we say that a party is entitled to such a jury instruction, so precisely what is the majority overruling?

22

invocation of the Fifth Amendment privilege, the majority relies upon several cases where we have upheld the evidentiary rulings of trial courts involving matters such as gruesome photographs and suicide notes. In each of these cases, a trial court had exercised its discretion in making evidentiary rulings, after employing balancing tests and making required relevancy determinations. The majority clearly fails to appreciate its conflicted reasoning when it robs trial courts of any discretion–finding the limited discretion we afforded to trial courts under a circumscribed set of circumstances in *Whitt* to be "problematic"–yet hails a series of cases involving evidentiary rulings that inherently require a court's exercise of discretion.

Because the majority is clearly disinclined to adopt a rule of law giving trial courts discretion to determine whether a non-party witness should be compelled to take the witness stand solely to invoke his or her Fifth Amendment, another alternative would have been for the majority to fashion an exception to the general prohibitory rule, as we did in *Whitt*:

> [w]here a defendant in a criminal case seeks to call a witness to the stand who intends to invoke his or her Fifth Amendment privilege against self-incrimination and the defendant has presented sufficient evidence to demonstrate the possible guilt of the witness for the crime the defendant is charged with committing, the trial court has the discretion to compel such witness to invoke his or her Fifth Amendment privilege in the presence of the jury.

23

> In making its decision as to whether a witness should be called to the stand for the purpose of invoking his or her Fifth Amendment privilege against self-incrimination, the trial court should consider whether the defendant will be unfairly prejudiced by not allowing the potentially exculpatory witness to invoke this privilege in the jury's presence.

220 W.Va. at 687, 649 S.E.2d at 260, syl. pts. 6 & 7. While the narrow exception formulated in *Whitt* does not apply under the facts of the case *sub judice*, the majority could have crafted another similarly narrow exception where a defendant has presented sufficient evidence to demonstrate the legitimacy of a claim of self-defense and the victim then advises that he or she will plead the Fifth Amendment.

I vehemently disagree with the majority's new rule of law regarding the Fifth Amendment as it radically departs from the general prohibitory rule and wholly lacks support from any other jurisdiction in this country. It is foreseeable that either the prosecution or the defense may strategically offer a witness solely to elicit the invocation of the Fifth Amendment to gain an improper inference. Consequently, I fear that the majority's new point of law has the potential to encourage wrongful manipulation of this state's criminal justice system.

### III. Compulsory Process

The defendant asserts that his Sixth Amendment compulsory process right was violated because the trial court did not allow the jury to observe the physical struggle of

endeavoring to have the obstreperous Mr. McGuire enter the courtroom and take the witness stand.[10] I agree with the majority's observation that a criminal defendant's Sixth Amendment right to compulsory process for obtaining witnesses in his or her favor is a "fundamental right." *See Washington v. Texas*, 388 U.S. 14 (1967).[11] However, I strongly disagree with the majority's creation of new law without a new syllabus point by "find[ing] the circuit court's decision not to make McGuire appear in front of the jury was error and violated the Defendant's constitutional right to compulsory process."

A defendant's constitutional right to compulsory process is met once the witness is brought to the courtroom, even when a trial court refuses to allow a witness to be called to the stand solely to invoke his or her Fifth Amendment privilege against self-incrimination in the jury's presence. Moreover, "[t]he calling of a witness who will refuse to testify does not fill the purpose of compulsory process, which is to produce testimony for the defendant. *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir.1974)."

---

[10]Under our state constitution, a defendant's compulsory process rights are set forth in article III, section 14.

[11]The majority has also cited *Washington* for the proposition that "excluding a defense witness from the jury's presence would impinge on this fundamental right for reasons outside the defendant's control." Unlike the case at bar, *Washington* did not involve a witness's refusal to testify. In fact, the Supreme Court stated that "[n]othing in this opinion should be construed as disapproving . . . the privilege against self-incrimination[.]" *Washington*, 388 U.S. at 23, n.21.

*State v. Rollins*, 188 S.W.3d 553, 568 (Tenn. 2006) (quoting *State v. Dicks*, 615 S.W.2d 126, 129 (Tenn. 1981)).  Indeed,

> [t]he Sixth Amendment requires that a witness be brought to court, but it does not require that he take the stand after refusing to testify.  Once a witness appears in court and refuses to testify, a defendant's compulsory process rights are exhausted.  It is irrelevant whether the witness's refusal is grounded in a valid Fifth Amendment privilege, an invalid privilege, or something else entirely.

*United States v. Griffin,* 66 F.3d 68, 70 (5th Cir. 1995) (citation and footnotes omitted); *accord State v. Acker*, 327 P.3d 931, 960 (Haw. 2014); *see also United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974) (stating that right to compulsory process would be exhausted by subpoenaed witness's physical availability at court)*; United States v. Roberts*, 503 F.2d 598, 600 (9th Cir. 1974) ("The Sixth Amendment right to call a witness must be considered in the light of its purpose, namely, to produce testimony for the defendant . . . Calling a witness who will refuse to testify does not fulfill the purpose[.]";  *Unsell v. Dretke*, No. Civ.A.4:03-CV-254-A, 2003 WL 22328904, *3 (N.D. Tex. Oct. 8, 2003) ("Although the Sixth Amendment requires that a witness be brought to court, it does not require that he take the stand after refusing to testify.") (citing *Griffin*, 66 F.3d 68)); *In re Blizzard*, 559 F.Supp. 507, 510 (S.D. Ga. 1983) (holding that right to compulsory process was not denied when trial court declined to enforce subpoena for witness who refused to testify); *Rollins*, 188 S.W.3d 553, 568 (quoting *Roberts,* 503 F.2d 598).

Mr. McGuire was transported to the courtroom from an out-of-state federal prison for the purpose of testifying at the defendant's trial. Although Mr. McGuire physically resisted and refused to take the witness stand; to be sworn; or to testify; the defendant's constitutional compulsory process rights were met once Mr. McGuire was brought to the courtroom.

While the majority undertakes to provide some guidance to trial courts when confronted with a defiant witness, each of the options that it suggests, including use of a two-way-video feed,[12] contempt, or extra bailiffs,[13] necessarily involves a discretionary decision by the trial court. Yet, in syllabus point two, the majority unwisely removes any discretion from trial courts by mandating that trial courts compel the non-party witness to invoke his

---

[12] In footnote 15, the majority cites *State v. Cox*, No. 13-0778 (W.Va. Oct. 2, 2014) (Memorandum Decision), wherein we found that the trial court had not abused its discretion when it allowed incarcerated witnesses to testify through a two-way-video-feed where they were determined to be a security threat. That case is inapt as none of the incarcerated witnesses had invoked a Fifth Amendment privilege. Further, the defendant did not argue on appeal that he was denied the right to confront the witnesses against him. *Id.* n.5.

While two-way-video-conferencing may satisfy a defendant's right to confrontation, I caution against any reliance upon footnote 15 of the majority opinion. The majority cites *Maryland v. Craig*, 497 U.S. 836 (1990), for the proposition that a defendant's Sixth Amendment right to confrontation may be satisfied where the "reliability of the testimony is otherwise assured." The majority fails to recognize that the test articulated in *Craig* was based on *Ohio v. Roberts*, 448 U.S. 56 (1980), which was abrogated by *Crawford v. Washington*, 541 U.S. 36 (2004).

[13] In the case at bar, the trial court actually employed two of the majority's suggested options in its effort to facilitate Mr. McGuire's testimony by holding him in contempt and utilizing extra bailiffs.

27

or her Fifth Amendment privilege in the jury's presence. It is simply incongruous for the majority to state that it is cognizant of a trial court's "inherent authority to conduct and control matters before it in a fair and orderly fashion[,]" while simultaneously stripping those trial courts of their discretion.

## IV. Conclusion

For the foregoing reasons, I respectfully concur, in part, and dissent, in part, to the majority's decision in this case.